Janet FOSTER, Individually and on behalf of all others similarly situated, Plaintiffs,

v.

BOISE–CASCADE, INC., Defendant.

Civ. A. No. 74–H–89.

United States District Court,
S. D. Texas,
Houston Division.

Aug. 27, 1976.

Carol C. Nelkin, Nelkin & Nelkin, Houston, Tex., for plaintiffs.

John H. Smither, Vinson, Elkins, Searls, Connally & Smith, Houston, Tex., for defendant.

## MEMORANDUM AND OPINION

CARL O. BUE, Jr., District Judge.

In this class action brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e, and the Equal Pay Act, 29 U.S.C.A. § 206(d)(1), the parties have agreed to a settlement of plaintiffs' claim of sex discrimination and have, in accordance with Rule 23(e), Fed.R.Civ.P., presented a settlement package to this Court for approval. The defendant, in addition to agreeing to make back pay awards to the named plaintiff and seven of the class members [1] totalling $13,188.00, and to abide by the terms of an injunction prohibiting any discrimination on the basis of sex, has assented to pay attorneys' fees of $12,000.00 over and above the $13,188.00 back pay award.

Plaintiffs' request for a court award of attorneys' fees, statutorily authorized in this sex discrimination action by section 706(k) of Title VII, 42 U.S.C.A. § 2000e-5(k), poses two questions for the Court's resolution: (1) what role should the district court play in the award of attorneys' fees in a Title VII class action settlement, particularly where (a) the fee award is set aside as an additional monetary element rather than deducted from the class recovery, and (b) the award is agreed to by both parties; and (2) assuming that this Court is obligated to review an attorneys' fees award under the circumstances delineated above, is the proposed fee of $12,000.00 a "reasonable" attorneys' fee?

## I. BACKGROUND OF THIS LITIGATION

Janet Foster filed suit on January 16, 1974, on behalf of herself and all other potential or actual female employees at defendant's Houston, Texas, facility, alleging that the facility maintains a policy of discrimination against women with respect to the terms, conditions and privileges of employment, a violation of Title VII of the 1964 Civil Rights Act, 42 U.S.C.A. § 2000e, and the Equal Pay Act, 29 U.S.C.A. § 206(d)(1). Plaintiff sought a declaratory judgment with respect to such unlawful employment practices, both affirmative and negative injunctive relief, and recovery of back pay for herself and class members.

Following a dispute between the parties as to the proper scope of discovery in this asserted class action, and the issuance of a discovery order by this Court on May 29, 1975, which ordered the defendant to answer completely 82 written interrogatories propounded by plaintiffs, the parties engaged in settlement negotiations culminating in a joint motion to enter a Consent Decree.[2] A two-step settlement procedure using guidelines set forth in Section 1.46 of the *Manual for Complex Litigation* was adopted.

As an initial step, the Court, on December 16, 1975, entered an Order of Provision-

---

1. The original settlement agreement called for back pay awards to eleven class members totalling $3,078.00, with the proviso that any class member whom the parties were unable to contact through notice procedures would be deemed to have opted out of the class. The parties subsequently were unable to locate four class members entitled to a total back pay of $732.00. Therefore, the consent decree includes an award of $2,346.00 to seven class members and $10,842.00 to the named plaintiff, for a total payment of $13,188.00.

2. At the April 9, 1976, hearing on the proposed attorneys' fees, counsel for defendant indicated that his client was desirous of settling the action to avoid the cost of the state-wide class discovery ordered by this Court. According to counsel, the company weighed the cost of compiling the data at its seven Texas facilities with the proposed settlement figure and decided to settle.

al Entry of Consent Decree ("Order of Provisional Entry") tentatively approving the terms of the compromise agreement. Defendant was instructed to notify class members of the impending action, the terms and conditions of the proposed Consent Decree, and the right of each class member to voice to the Court any objections or suggestions with regard to the proposed settlement by no later than March 1, 1976.[3] Upon expiration of the March 1, 1976, deadline, and in accordance with the Order of Provisional Entry, counsel submitted a joint report on the results of notice to the class. The report indicated that four of the eleven class members to whom defendant had agreed to make a back pay award could not be located and thus, pursuant to the Order of Provisional Entry, these potential claimants would be deemed to have opted out of the class.

With the procedure for class notification having been completed, the parties sought entry of the Consent Decree. However, in reviewing the recommended compromise, this Court was unable to ascertain the amount in attorneys' fees which had been agreed to by counsel. Accordingly, in order to discharge fully its obligation under Rule 23(e) to scrutinize any proposed settlement of a class action so as to protect the interests of absent class members, and cognizant of its discretionary power under section 706(k) of Title VII, 42 U.S.C.A. § 2000e–5(k), to award a reasonable attorneys' fee to the prevailing party, this Court requested counsel for the plaintiffs to submit a report indicating the amount and method of calculating the fee.

Counsel for the plaintiffs responded by letter of March 17, 1976, indicating a fee of $12,000.00, and a total time investment of 121½ hours. Two preliminary comparisons were disturbing to this Court. First, on an hourly fee basis, the proposed award approximates $100.00 per hour. Second, the fee award of $12,000.00 approaches the $13,188.00 total monetary award flowing to the named plaintiff and seven of the class

members. Accordingly, the Court ordered an evidentiary hearing to explore more fully the proposed fee and to determine whether it comports with the legal requirements of Title VII and Fed.R.Civ.P. 23.

At the hearing conducted on April 9, 1976 ("April 9 hearing"), this Court heard the testimony of three Houston attorneys experienced in Title VII litigation who testified as to the hourly rates for legal services of the type provided in this case, and the reasonableness of the proposed fee. Because defendant does not contest the proposed fee award, no cross-examination was conducted. Upon inquiry by the Court, the witnesses further expressed their views as to the proper role to be played by the Court in evaluating the reasonableness of the instant settlement proposal, including attorneys' fees. Additionally, the Court heard the non-testimonial views of counsel for the defendant and of co-counsel for the plaintiffs. An Itemization of Services was also submitted by counsel for the plaintiffs, as was a Memorandum on Attorneys' Fees.

## II. JUDICIAL REVIEW OF ATTORNEYS' FEES PROPOSED IN SETTLEMENT OF TITLE VII CLASS ACTIONS

### A. Attitude of Counsel Towards This Court's Active Role

In addition to justifying the size of the agreed-to attorneys' fee, the legal memorandum submitted by plaintiffs' counsel questions the propriety of this Court's consideration of the size of the stipulated fee. However, aside from presenting legal and pragmatic arguments in support of counsel's position that the Court should not modify an award of fees which is both uncontested and over and above the monetary amount going to the named plaintiff and class members, the tenor of the brief also reveals counsel's strong distaste for the interest displayed by this Court in its efforts to define and fulfill properly its Rule 23 and Title VII duties in this embryonic area of

**3.** The notice, however, did not reveal the amount in attorneys' fees to be paid by defendant as part of the settlement agreement. *See* Part II.C.3., *infra.*

the law. The attitude of counsel towards any judicial "interference" is unmistakably clear, as the following passage from the legal memorandum demonstrates:

"A threshold question, of course, is whether the amount of fees agreed upon is a relevant inquiry by the Court. However, the real issue is not *whether* the Court should inquire as to the amount of attorneys' fees, but *why* the Court should inquire.

"This procedural development wherein the Court has examined the proposed decree and found it to be fair, just and equitable to the named Plaintiff as well as to the class members, but where the Court nonetheless believes it to be the Court's duty to further scrutinize the amount of attorneys' fees agreed upon by the parties, gives rise to the issue of whether or not Defendant should have the assistance of the United States District Court in determining after the fact whether a settlement as to Plaintiff's claim for attorneys' fees entered into by Defendant on the advice of the distinguished law firm of Vinson, Elkins, Searls, Connally & Smith was the best possible settlement Defendant could have made. In response to the Court's suggestion contained in its order of March 23, 1976, Plaintiff submits this memorandum which will address what, in Plaintiff's view, are the relevant legal precedents as well as the practical effects of the procedure established by the Court. Additionally, with great reluctance, the memorandum will present a factual and legal justification for the particular figure agreed upon by the parties in full and final settlement of Plaintiff's claim for attorneys' fees."

Memorandum on Attorneys' Fees, at 1, 2 & 3.

"The reluctance is not based upon any apprehension that the agreed upon amount is not reasonable; rather, it is based upon the fact that in Plaintiff's view, . . . the procedure adopted by the Court may well signal the death knell of Title VII settlements."

Memorandum on Attorneys' Fees, Footnote 1.

Separate and apart from this dramatic forecast, the fact remains that counsel's memorandum is completely devoid of any case authorities which support the view that the amount of stipulated attorneys' fees in this case is beyond the pale of judicial scrutiny. The Court would simply note that the procedure utilized in this case is one mandated by local rule in the Southern District of New York. Local Rule 11B of the Local Rules of the Southern District of New York provides that:

"Fees for attorneys or others shall not be paid upon the recovery or compromise in a derivative or class action on behalf of a corporation or class except as allowed by the court after a hearing upon such notice as the court may direct."

As is evident, this local rule does not except certain types of fee arrangements, such as the one proposed in the instant case, from the hearing requirement.

## B. Quasi-Jurisdictional Bases for Judicial Review of Attorneys' Fees

 Two regulations, operating independently or in tandem, can supply the quasi-jurisdictional predicate for a judicial review of the proposed attorneys' fees in the settlement of a Title VII class action.

### 1. Duty Imposed by Rule 23(e)

Rule 23(e), Fed.R.Civ.P., provides:

"A class action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs."

Therefore, if the plaintiff asserts the actions on behalf of a class, the district court, before approving the compromise, must scrutinize all of the terms of the proposed settlement to ensure that the compromise is fair, just and reasonable as to all unnamed class members. *Grunin v. International House of Pancakes,* 513 F.2d 114, 123 (8th Cir. 1975); *Bryan v. Pittsburgh Plate Glass Co.,* 494 F.2d 799 (3rd Cir.), *cert. denied,* 419

U.S. 900, 95 S.Ct. 184, 42 L.Ed.2d 146 (1974), *reh. denied,* 420 U.S. 913, 95 S.Ct. 836, 42 L.Ed.2d 844 (1975); *Young v. Katz,* 447 F.2d 431, 433 (5th Cir. 1971). The duty to investigate the provisions of the suggested settlement includes the obligation to explore the manner in which fees of class counsel are to be paid and the dollar amount for such services. *See Manual for Complex Litigation,* 1 J. Moore, Federal Practice, Part 2, § 1.46, at 50 (2d ed. 1975) [hereinafter Manual]. As the Manual makes clear:

> "If the action is concluded by settlement, the Court should require a statement of all proposed charges for fees and expenses by the counsel for the class and any subclasses, including the identity of all counsel sharing in the fees. In an appropriate case the court may also require disclosure of attorneys' fees paid to counsel for defendants. Only reasonable charges for fees and expenses should be authorized upon approval by the court after notice and hearing. All other charges should be expressly forbidden by court order."

*Id.* § 1.47, at 61–62.

■ In order to properly carry out its Rule 23(e) role as the guardian of the rights of absent class members, the district court must not perfunctorily approve a class settlement. Rather, the court must evaluate the proposed compromise with care and "set forth the reasoning supporting its conclusion in sufficient detail to make meaningful review possible; use of 'mere boilerplate' language will not suffice." *Bryan v. Pittsburgh Plate Glass Co., supra* at 804; *Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson,* 390 U.S. 414, 434, 88 S.Ct. 1157, 20 L.Ed.2d 1 (1968). "Unless the court can make appropriate independent factual findings of fairness on the record before it, a plan should not be approved simply because

counsel on both sides recommend it." Manual, *supra* § 1.46, at 61.

■ Accordingly, this Court's duty under Rule 23(e) cannot and should not be delegated to the litigants' attorneys. Rather, the burden should be placed on the parties, especially the class representative, to prove to the district court and class members that the recommended compromise and all of its components are fair, reasonable and adequate. *Grunin v. International House of Pancakes, supra* at 123.

### 2. Preventing Misuse of Rule 23

■ Apart from the Rule 23(e) duty to ensure that a settlement of any class action is fair to absent class members, the Court has the further obligation in any Rule 23 class action to protect this special procedural devise from misuse. The most commonly-feared abuse is the possibility that Rule 23 encourages "strike suits promoted by attorneys who simply are seeking fat fees."[4] 7A C. Wright & A. Miller, Federal Practice and Procedure § 1803, at 104 (Supp. 1976). Thus, in the context of a class action settlement, even if the Court finds that the terms of the proposed compromise are fair and reasonable to absent class members as required by Rule 23(e), the Court still has an unbending duty to ensure that counsel is not unreasonably benefited by the award of an exorbitant fee. *City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 469–70 (2d Cir. 1974); *Alpine Pharmacy, Inc. v. Chas. Pfizer & Co.,* 481 F.2d 1045, 1050 (2d Cir. 1973).

For example, in *Levin v. Mississippi River Corp.,* 377 F.Supp. 926 (S.D.N.Y.1974), the district court adopted the following procedure. Notices were sent to the class members informing them of the settlement and a hearing date at which objections could be voiced. The notices set forth the amount in attorneys' fees which had been requested by counsel for each of the stockholder classes,

---

4. At the recent National Conference on the Administration of Justice, one participant speaking on the problems of class actions, especially in consumer suits, observed:

"In the nearly half century of my practice I have never seen a single other circumstance which has created the cynicism at the bar that has arisen from the settlement negotiations in these cases and the accompanying maneuvering for fees."

Remarks of Francis Kirkham, San Francisco attorney, 44 U.S.L.W. 2491 (April 20, 1976).

and stated that "their consideration would be deferred until after entry of final judgment." 377 F.Supp. at 927. As part of the settlement, the two defendants agreed to split the cost of any attorneys' fees awarded by the court.

The court subsequently approved the settlement and entered final judgment. Once the settlement had been consummated, the court entertained counsel's requests for fees. The court, having approved the settlement on behalf of absent class members and having ordered the distribution of funds to the class, had no Rule 23(e) interest in the size of the fees. Nevertheless, the court announced its duty to undertake an independent appraisal of counsel's fee request to avoid awarding "windfall fees" and to approve only a reasonable fee. 377 F.Supp. at 931.

The philosophy which underlies the courts' concern for the reasonableness of fee awards in class actions is eloquently presented by Judge Moore of the Second Circuit in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 469–70 (2d Cir. 1974) (hereinafter *City of Detroit* ). In *City of Detroit,* the district court had approved a large attorneys' fee award as part of the settlement of an antitrust class action without conducting a hearing or requiring the submission of affidavits. Because there is no statutory authorization for an allowance of fees in an antitrust settlement, *see Lindy Bros. Builders, Inc. v. American R & S Sanitary Corp.*, 487 F.2d 161, 164–65 (3rd Cir. 1973), the court relied upon the "equitable fund" theory and awarded counsel a percentage of the settlement fund. Judge Moore's analysis of the attorneys' fees problem and his composite of relevant authorities, although aimed at an "equitable fund" theory, is applicable to all fee awards to class counsel:

"The practice of awarding attorneys' fees is one that has been 'delicate, embarrassing and disturbing' for the courts. *Milwaukee Towne Corp. v. Loew's Inc.*, 190 F.2d 561, 569 (7th Cir. 1951), cert. denied, 342 U.S. 909, 72 S.Ct. 303, 96 L.Ed. 680 (1952). This embarrassment is rooted in the fact that 'the bitterest complaints [about the legal profession] from laymen [are directed at] the windfall fees and featherbedding that lawyers have managed to perpetuate through . . . their influence with the judiciary.' Graham, Guest Opinion on Legal Fees: Fluffing the Golden Fleece, Juris Doctor, 10, 11 (February, 1973).

"Unfortunately, there has been more than a little justification for the dissatisfaction of the lay community with the application of the equitable fund doctrine under Rule 23. Criticism has been rampant even within the judiciary. In *Illinois v. Harper & Row Publishers*, 55 F.R.D. 221 (N.D.Ill.1972), the District Court observed that:

'If Rule 23 is to be preserved against *deserved* criticism, some attempt must be made by the court to suit the award of the fees to the performance of the individual counsel in light of the size of the settlement. Otherwise, the attorneys who are taking advantage of class actions to obtain lucrative fees will find themselves vulnerable to the criticism expressed in the Italian proverb, "A lawsuit is a fruit tree planted in a lawyer's garden." '

55 F.R.D., at 224. (Emphasis supplied). "In a similar vein the United States District Court for the Southern District of New York pointed out: '[I]t [the Rule 23 class action] has resulted in miniscule recoveries by its intended beneficiaries while lawyers have reaped a golden harvest of fees.' *Free World Foreign Cars, Inc. v. Alfa Romeo*, 55 F.R.D. 26, 30 (S.D. N.Y.1972). Finally, dissenting in *Eisen v. Carlisle & Jacquelin*, 391 F.2d 555 (2d Cir. 1968) (Eisen II), then Chief Judge Lumbard wrote: 'Obviously the only persons to gain from a class suit are not the potential plaintiffs, but the attorneys who will represent them.' 391 F.2d at 571.

"For the sake of their own integrity, the integrity of the legal profession, and the integrity of Rule 23, it is important that the courts should avoid awarding 'windfall fees' and that they should likewise avoid every appearance of having

done so. To this end courts must always heed the admonition of the Supreme Court in *Trustees v. Greenough, supra,* [105 U.S. 527, 26 L.Ed. 1157], when it advised that fee awards under the equitable fund doctrine were proper only 'if made with moderation and a jealous regard to the rights of those who are interested in the fund.' 105 U.S., at 536 [26 L.Ed. 1157]. *See also Wewoka v. Banker,* 117 F.2d 839, 841 (10th Cir. 1941). The award must be made with an eye to moderation and, if for no other reason but to allay suspicion, the court should typically take pains to allow a complete airing of all objection to a petitioner's fee claim."

The Second Circuit, in addition to recognizing the Court's role, also has emphasized the "public interest" nature of all Rule 23 class litigation in stressing the affirmative duty placed upon class counsel:

"One accepting employment as counsel in a class action does not become a class representative through simple operation of the private enterprise system. Rather, both the class determination and designation of counsel as class representative come through judicial determinations, and the attorney so benefited serves in something of a position of public trust. Consequently, he shares with the court the burden of protecting the class action device against public apprehensions that it encourages strike suits and excessive attorneys' fees."

*Alpine Pharmacy v. Chas. Pfizer & Co., Inc.,* 481 F.2d 1045, 1050 (2d Cir. 1973).

■ Therefore, aside from the Court's obligation as class guardian under Rule 23(e), this Court has a mutually-exclusive duty in any class action to examine the basis in fact for the size of the attorney's fee in order to protect Rule 23 from the taint that it encourages strike suits and the award of excessive fees to counsel.

### 3. Discretionary Authority to Award Attorneys' Fees in Title VII Actions

■ The statutory allowance for the payment of attorneys' fees to the prevailing party in Title VII litigation also provides a basis for judicial inquiry into the "reasonableness" of a proposed attorneys' fee in a settlement of a Title VII class action. Section 706(k) of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e–5(k), provides that:

"In any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorney's fee as part of the costs, and the Commission and the United States shall be liable for costs the same as a private person."

■ Unlike other attorneys' fees statutes which mandate an allowance of attorneys' fees to a prevailing plaintiff,[5] the award of attorneys' fees pursuant to section 706(k) is discretionary, and this discretion lies solely with the Court.[6] *Weeks v. Southern Bell Tel. & Tel.,* 467 F.2d 95, 97 (5th Cir. 1972). "The statute does not prescribe the payment of fees to the lawyers. It *allows* the award to be made to the prevailing party." *Clark v. American Marine Corp.,* 320 F.Supp. 709, 711 (E.D.La.1970), *aff'd,* 437 F.2d 959 (5th Cir. 1971) (emphasis added).

### a. Definition of "Prevailing Party" to Include a Settling Plaintiff

■ The term "prevailing party" as used in section 706(k) recently has been interpreted to include a party who successfully settles his or her Title VII claim without a judicial determination on the merits. *See Parker v. Matthews,* 411 F.Supp. 1059 (D.D. C.1976) (hereinafter *Parker*); *cf. Corcoran v. Columbia Broadcasting Co.,* 121 F.2d 575 (9th Cir. 1941). *See generally* Annot., 66 A.L.R.3d 1115 (1975). In rejecting an abso-

---

**5.** *See, e. g., Clayton Act,* 15 U.S.C.A. § 15 (1970); *Truth in Lending Act,* 15 U.S.C.A. § 1640(a) (1974); *Fair Labor Standards Act,* 29 U.S.C.A. § 216(b) (1965); *Railway Labor Act of 1926,* §§ 1, 2(c), 2(d), 45 U.S.C.A. § 153, subd. 1(p) (1970).

**6.** For a listing of other statutes which permit the court to exercise its discretion in shifting responsibility for payment of attorneys' fees, see *Alyeska Pipeline Service Co. v. The Wilderness Society,* 421 U.S. 240, 261 n. 35, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975).

lute view that a plaintiff who achieves a settlement of his or her Title VII claim should be deemed automatically to be a "prevailing party," the court cautioned that

> "attorneys' fees should not be awarded in nuisance settlements. Therefore, to avoid an abuse of the attorneys' fees provision, there must be some additional measure employed by the courts to determine whether the plaintiff is in fact the 'successful party' and whether the plaintiff's action has advanced the public interest."

411 F.Supp. at 1064. The court therefore analyzed the facts leading up to the compromise and reviewed the nature of the settlement before concluding that the plaintiff qualified as a "prevailing party" within the meaning of section 706(k).

In this cause, the Court has no difficulty in determining that the named plaintiff has prevailed in this litigation. The proposed Consent Decree permanently enjoins defendant from engaging in any employment practice which has the purpose or effect of discriminating against any female on the basis of sex. Moreover, the defendant has agreed to make back pay awards to the named plaintiff and class members. In a letter to the Court dated March 17, 1976, counsel for plaintiff also points out that the settlement includes substantial affirmative relief for the class members in that lines of progression for female production workers will now be open. Accordingly, this Court finds the named plaintiff to be a "prevailing party" within the meaning of the statute.

### b. Principles Governing Application of Section 706(k)

As the Fifth Circuit Court of Appeals points out in its widely-cited opinion in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir. 1974) (hereinafter *Johnson* ), adequate attorney compensation under section 706(k) is necessary to encourage private enforcement of the congressional policy against discrimination on the basis of race, color, religion, sex or national origin. *See, e. g., Baxter v. Savannah Sugar*

*Refining Corp.,* 495 F.2d 437, 447 (5th Cir. 1974); *Clark v. American Marine Corp.,* 320 F.Supp. 709 (E.D.La.1970), *aff'd,* 437 F.2d 959 (5th Cir. 1971). *See also Newman v. Piggie Park Enterprises,* 390 U.S. 400, 401–02, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968) (similar provision in Title II). To ensure effectuation of this aim through citizen enforcement, the circuit court has encouraged district judges to make liberal utilization of the attorneys' fees statute. *See, e. g., Rowe v. G. M. Corp.,* 457 F.2d 348, 360 n. 26 (5th Cir. 1972); *Long v. Georgia Kraft Co.,* 455 F.2d 331, 336–37 (5th Cir. 1972).

Counterbalancing this expression of policy is the caveat that courts "must remember that they do not have a mandate under Section 706(k) to make the prevailing counsel rich". 488 F.2d at 719. In other words, as aptly stated by the Fifth Circuit Court of Appeals, courts should avoid awarding counsel fees

> "in a manner to make the private attorney general's position so lucrative as to ridicule the public attorney general. The statute was not passed for the benefit of attorneys but to enable litigants to obtain competent counsel worthy of a contest with the caliber of counsel available to their opposition and to fairly place the economical burden of Title VII litigation."

*Id.*

These precepts apply with equal force in a settlement context. The Court, in order to guarantee that no party is unjustly enriched by the compromise of a Title VII claim, must assure through independent scrutiny that an award of attorneys' fees, whether as part of a settlement package or following a trial on the merits, furthers the policies announced by the Fifth Circuit in *Johnson.*

Counsel cites no authority for the proposition that the parties' agreement as to the size and source of the fee precludes a judicial inquiry and determination as to the reasonableness of the proposed fee. Indeed, the Fifth Circuit has acknowledged that although the litigants may submit jointly to the district court an attorneys' fee

which they deem appropriate, the court is in no way bound by the proposed stipulated sum in its determination of a reasonable fee to be awarded as part of the judgment. *See Mims v. Wilson,* 514 F.2d 106, 111 (5th Cir. 1975). Moreover, for reasons discussed hereafter in this opinion, *see* Part II.C.1., *infra,* there is no guarantee that what the parties consider an appropriate fee is in fact a reasonable fee based upon the twelve factors delineated by the Fifth Circuit in *Johnson.*

 Therefore, when a prevailing party in a Title VII action seeks recovery of attorneys' fees as part of a settlement package, this Court concludes that it is statutorily charged with the responsibility to determine whether or not fees should be awarded and, if so, to fashion a reasonable fee.

### C. Counsel's Legal Objections to Judicial Review of the Proposed Fee

In the instant case, the quasi-jurisdictional bases outlined above which mandate judicial scrutiny of a proposed attorneys' fee are all present. As pointed out in the opening sentence of counsel's legal memorandum, plaintiffs seek to enforce their "statutory right [under section 706(k)] to have Defendant bear the burden of this [attorneys' fees] expense." Memorandum on Attorneys' Fees, at 1. Additionally, the proposed settlement seeks to compromise the rights of non-party class members, thus calling into play this Court's mandatory duty of review under Rule 23(e).

Nevertheless, counsel for plaintiffs contends that the special nature of the attorneys' fees agreement proposed in this case effectively shields the fee award from examination and evaluation by the Court. As stated by counsel,

"[a] threshold question, of course, is whether the amount of fees agreed upon is a relevant inquiry by the Court. However, the real issue is not *whether* the Court should inquire as to the amount of

attorneys' fees, but *why* the Court should inquire."

Memorandum on Attorneys' Fees, at 3. Counsel proffers three arguments in support of her position: (1) that a fee award "over and above" sums going to the named plaintiff and class members dissipates this Court's Rule 23(e) duty; (2) that an attorneys' fee agreed to by the parties as part of a settlement package should not be subject to judicial review; and (3) that where no objection to any portion of the proposed decree has been lodged by any class member, and the Court has found the substantive provisions of the compromise to be acceptable, the Court's interest in the amount of attorneys' fees substantially, if not totally, dissipates. These arguments will be addressed in the order outlined above.

### 1. Attorneys' Fees "Over and Above" the Monetary Award to the Plaintiff and Her Class

 Plaintiffs' counsel contends that because the fee award is a separate award in addition to the amounts to which the named plaintiff and unnamed class members are entitled, this Court's Rule 23(e) obligation is substantially, if not totally, nullified. Counsel argues that while the Court should concern itself with the amount of the proposed fee when the fee award will be drawn from the same funds tendered by the defendant in settlement of all claims (the "common benefit" or "equitable fund" theory),[7] no similar concern is present or justified when the award constitutes a distinct monetary payment entirely separable from amounts flowing to the class. As explained by counsel, the proposed award is

"over and above the amounts to which the named Plaintiff and unnamed class members show themselves to be entitled. Thus, whether an attorneys' fee award to a Title VII Plaintiff were $12.00, $12,-000.00, or $12,000,000.00, the back pay awards to the individual Plaintiff and the

7. For a discussion of the common benefit doctrine *see generally* Comment, *Curtailment of Court Awarded Attorneys' Fees in Public Inter-* *est Litigation,* 25 Catholic U.L.Rev. 148, 160–164 (1975).

class members would be unaffected *as a matter of law.*"

Memorandum on Attorneys' Fees, at 4 (emphasis added).

Counsel has not proffered any legal authorities to buttress this legal proposition. More importantly, and contrary to counsel's analysis, courts have found that there are instances in which, as a matter of fact, the size of an "over and above" attorneys' fee will indeed bear on the interests of class members. Accordingly, these courts have concluded that the facts surrounding an "over and above" award must be developed and subjected to the same judicial scrutiny given "common benefit" awards in order to properly carry out the mandate of Rule 23(e). *See Grunin v. International House of Pancakes,* 513 F.2d 114, 127–28 (8th Cir. 1975) (hereinafter *Grunin*); *Merola v. Atlantic Richfield Co.,* 493 F.2d 292, 297–98 (3rd Cir. 1974).

In *Grunin,* the United States Court of Appeals for the Eighth Circuit was presented with an argument similar to that made by counsel. The district court, after rejecting an earlier proposed settlement of a private antitrust class action, had approved a later proposal which, aside from effecting major changes in the contested franchise agreement, created a $500,000.00 class settlement fund and provided for the payment of up to $1.25 million in attorneys' fees to numerous attorneys for the class, the distribution of fees between the attorneys to be made by the Court. Following a hearing and based upon time sheet affidavits submitted by all the attorneys except one (Mr. Berger), the court divided up the $1.25 million fee.

On appeal, Berger contested the sufficiency of his share in attorneys' fees, contending that the district court's mathematical focus on hours and rates was improper because of the "over and above" nature of the fee agreement. Berger argued that where the attorneys' fees are set aside in the proposed compromise rather than subtracted from the class recovery on a "common benefit" or "equitable fund" theory, an objective evaluation of the proposed fee should be discarded in favor of more subjective factors such as the reputation of the attorneys, the risk of the litigation, the responsibility undertaken, and the dollar amount in fees which reasonably could have been charged a victorious plaintiff.

The Eighth Circuit, in rejecting the distinction urged by Berger, explained:

"The argument that a lesser standard should apply for purposes of the allocation of fees merely because the attorneys have had the foresight to provide for themselves in the agreement is equally unavailing. At some point the discretion of the court must be exercised in determining what portion of the $1.25 million [fee] is 'fair, reasonable and adequate.' In view of the precarious financial situation of the company, which was noted by the court in making its awards, we are convinced that the amount of attorneys' fees actually awarded is extremely important to the class. For example, if the court had not awarded the whole $1.25 million, the [defendant's] cash flow would have been improved by whatever portion was unused, thus increasing the chances that the [defendant] would remain able to carry through on its contractual obligations under the settlement."

513 F.2d at 128. The Circuit Court thus viewed the size of the attorneys' fees award, regardless of the theory by which it was extracted from the defendant, as a relevant consideration in assessing the suitability and fairness of the proposed compromise to the absent class members. Moreover, without a factual inquiry at the district court level, the unstable economic condition of the defendant company and its suspect ability to satisfy the monetary demands of the proposed decree would not have been discovered. The *Grunin* case therefore demonstrates the necessity of a judicial inquiry into the size of every attorneys' fees award to determine whether it is a fair and reasonable fee when placed against the backdrop of all surrounding and relevant circumstances. In addition to the Eighth Circuit, the Third Circuit also has held specifically that the standards by

which a court should measure the reasonableness of a proposed award of fees in a class action settlement are the same for both "common benefit" and "over and above" awards. *Pitchford v. Pepi, Inc.,* 531 F.2d 92, 109–111 (3rd Cir. 1976); *Merola v. Atlantic Richfield Co.,* 493 F.2d 292, 297–98 (3rd Cir. 1974).

The rationale justifying an independent judicial assessment of an "over and above" fee award, so as to protect the interests of absent class members, is cogently discussed in the current edition of the *Manual for Complex Litigation*:

"Two types of provisions in settlement agreements have appeared with sufficient frequency to warrant comment. The first is the agreement that the fees and sometimes expenses of plaintiffs' counsel are to be paid separately by the defendant(s) over and above the settlement. Frequently, the amount thereof is not disclosed at the time the settlement is proposed. Such an arrangement should not be permitted. All amounts to be paid by the defendant(s) are properly part of the settlement fund and should be known and disclosed at the time the fairness of the settlement is considered.

"The effect of such an arrangement is to neutralize the court's power and responsibility to pass upon the reasonableness of the amounts to be paid to plaintiffs' counsel since any reduction by the court in the amount counsel agree upon after the class settlement has been approved will simply go to reduce the aggregate amount defendant(s) will pay and will not increase the amount to be paid to the plaintiffs. As a result, there is little incentive for the judge to reduce the agreed upon fees. On the other hand, the effect of such an arrangement may be to cause counsel for the plaintiffs to be more interested in the amount to be paid as fees than in the amount to be paid to the plaintiffs. Only if the aggregate of all payments to be made by defendants is disclosed in the proposed settlement can the class members and the court make any intelligent judgment as to the fair-

ness and reasonableness of a proposed settlement.

"When counsel for the class negotiates simultaneously for the settlement fund and for individual counsel fees there is an inherent conflict of interest."

Manual, *supra* § 1.46, at 57–58 (emphasis added). *See Saylor v. Lindsley,* 456 F.2d 896, 900–01 (2nd Cir. 1972).

As the excerpt correctly points out, the Court cannot and should not passively assume that counsel for the plaintiffs has acted in the sole or best interest of the class in negotiating the proposed settlement and accompanying attorneys' fee. To class members, a judgment after trial in favor of defendant means the defeat of an expectation. To counsel, however, a judgment for defendant means that counsel is not reimbursed for substantial outlays of time. *See Saylor v. Lindsley, supra.* Therefore, the spectre persists, absent appropriate judicial inquiry, that plaintiffs' attorney may accept an insufficient judgment for the class in trade for immediate and certain compensation for himself in the form of legal fees deducted from the total available funds proffered by defendant. The actual presence and the potential consequences of such a conflict of interest cannot be ignored.

Moreover, it is axiomatic that the overwhelming concern of counsel for the defendant in considering a proposed compromise is the total dollar cost of settlement. The defendant is uninterested in what portion of the total payment will go to the class and what percentage will go the class attorney. In many instances, the defendant may opt for a proposed settlement figure at an early stage in the litigation solely because the proposed sum is, for instance, less than the cost of class discovery. If settlement at a proposed figure is less expensive to an employer than satisfying plaintiffs' discovery demands, defendants will have "little practical alternative but to settle such suits regardless of their belief in the innocence of their acts." Remarks of Francis R. Kirkham, San Francisco attorney, at the National Conference on Admin-

istration of Justice, 44 U.S.L.W. 2491 (April 20, 1976).

According to the attorney for the defendant who spoke, albeit briefly, at the April 9 hearing on the fee award, the decision to settle the instant lawsuit was indeed based upon an economic comparison of the cost of compromise with the cost of compliance with this Court's discovery order of May 29, 1975. Assuming that the defendant can calculate the sum of money which must be expended to satisfy plaintiffs' class discovery requests, it is readily apparent that plaintiffs' counsel can apply economic leverage to effect a settlement at any figure less than the looming discovery expenditure. Whether this leverage has worked in favor of the class or in favor of counsel at the expense of the class is a question which Rule 23(e) obligates the Court to answer. In addition, as discussed in Part II.B.2., *supra*, even if the Court determines that the settlement as to the class member is fair and reasonable, the Court must further examine the size of the fee to prevent the payment of an exorbitant fee which has been extracted from a corporate defendant by use of the class action mechanism.

Aside from the Rule 23 basis for this Court's involvement, any attorneys' fee award in a Title VII settlement which is sought over and above the substantive fund can only be authorized pursuant to section 706(k) of Title VII, 42 U.S.C.A. § 2000e–5(k). And as discussed in Part II.B.3., *supra*, any such award is within the sole discretion of the district court and must represent a reasonable fee. Therefore, both Rule 23 and section 706(k) statutorily direct this Court to evaluate the reasonableness of the "over and above" fee award recommended in this case.

### 2. Attorneys' Fees Agreed to by Both Parties

■ Counsel for plaintiffs further argue that the Court should not modify a proposed fee award which is uncontested and agreed upon by the parties. Counsel points to the Fifth Circuit's comments in *Johnson*

*v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir. 1974) (hereinafter *Johnson* ):

"In cases of this kind, we encourage counsel on both sides to utilize their best efforts to understandingly, sympathetically, and professionally arrive at a settlement as to attorney's fees. Although a settlement generally leaves every litigant partially dissatisfied, so does a judicial award for attorney's fees."

488 F.2d at 720. No other legal precedents are cited by counsel to buttress her contention.

Subsequent to the *Johnson* decision, the Fifth Circuit has indicated that while a settlement of the attorneys' fees issue is preferable, it is in no way binding on the trial court. In *Mims v. Wilson,* 514 F.2d 106 (5th Cir. 1975) (hereinafter *Mims* ), the district court disregarded a proposed fee award that had been agreed to by both parties prior to judgment and after trial of a Title VII class action in which the district court found- a pattern of race discrimination. On appeal, counsel for plaintiffs challenged the reasonableness and adequacy of the court's award. Although the circuit court remanded the determination back to the district judge because he had not enunciated the reasons for his substitute award, the court did not suggest that the district judge was bound by the agreed-to fee. In fact, the court noted that "plaintiff acknowledges that the district court was not bound to enforce the stipulated sums". 514 F.2d at 111.

Of course, in *Mims* the settlement as to attorneys' fees followed a trial on the merits, whereas in the instant case the agreed-to award accompanies a proposal to settle the controversy prior to trial. Although the Court is of the opinion that any such distinction is unimportant to the present inquiry, it should be noted that the guarantee that an agreement as to fees has been arrived at "understandingly, sympathetically, and professionally" is much greater in the *Mims* situation where the sole item in dispute is the amount in attorneys' fees. As has been pointed out above, *see* Part II.C.1., *supra,* when the defendant is con-

fronted with a settlement package including a request for attorneys' fees, the defendant will be interested only in the total cost of settlement as compared to the cost of litigation, and will not be interested in the manner in which the total fund is distributed between plaintiffs and plaintiffs' counsel. Therefore, because the defendant is not interested in the size of the distinct monetary elements which comprise the total settlement figure, "the setting is not the familiar, and . . . comfortable, alignment of adversary interests". *Rothman v. Gould*, 52 F.R.D. 494 (S.D.N.Y.1971). In *Mims*, however, the issue of the amount of attorneys' fees was the sole monetary item in dispute, the Court having determined the monetary award to which plaintiffs were entitled. In MESSAGE(S) *MORE SECTIONS FOLLOWsuch a case, there is a much greater likelihood that the defendant has scrutinized the reasonableness of the attorneys' fee before agreeing to a stipulated sum.

Judge Weinfeld, in *Levin v. Mississippi River Corp.*, 377 F.Supp. 926 (S.D.N.Y.1974) (hereinafter *Levin*), also has considered and rejected the argument that an agreed-to attorneys' fee, as part of a class action compromise, is binding on the district court. In *Levin*, which involved the settlement of a complex stockholders' class and derivative action which had been in litigation for two decades, the parties entered into agreement as to the amount in fees to be awarded counsel representing one of the stockholder classes. The stipulation was in the amount of $2,000,000.00, a figure much lower than the original request by counsel for $6,953,-000.00. The discussion by Judge Weinfeld as to the significance of such an agreement is poignant:

"These applicants urge that since [defendants] are obligated to pay any fee award, their agreement not to oppose the reduced application, particularly in view of their opposition to the originally requested amount, affords strong assurance of its reasonableness and accordingly should be given great, if not decisive, weight. However, to accept as conclusive the parties' agreement as to fees in class

or derivative action would mean the surrender of the court's duty and its discretion. The agreement, while it may have some relevance, does not relieve the court of its duty to make an independent appraisal, to 'avoid awarding "windfall fees" and . . . likewise avoid every appearance of having done so,' and to award only such fees that are fair, 'with an eye to moderation' based upon the applicable standards."

377 F.Supp. at 931 (footnotes deleted).

Accordingly, based on existing case authorities and the nature of this Court's obligations under Rule 23 and section 706(k) of Title VII, the Court concludes that any agreement as to attorneys' fees in Title VII class action settlements should be accorded only such weight as the district court deems appropriate, based on its own review of the facts and independent determination of reasonableness.

### 3. Lack of Objections from Class Members and the Court

Finally, counsel contends that the Court should not look into the proposed attorneys' fee since no class member has expressed opposition to entry of the proposed decree, and since the Court has intimated its approval of the substantive terms of the compromise.

As discussed in Part II.C.1., *supra,* Section 1.46 of the *Manual for Complex Litigation* stresses that any proposed fee award which is a part of the fund to be paid by the defendant should be disclosed to class members and the Court because neither can judge intelligently the fairness and reasonableness of the proposed compromise without such figures. *See Miller v. Mackey Int'l, Inc.,* 515 F.2d 241, 243 (5th Cir. 1975). This is especially striking under the terms of this settlement wherein the proposed attorneys' fee represents a whopping 48 percent of the total amount to be paid by defendant in settlement of the action.

Although the notice sent to class members in the instant case included an exact monetary breakdown of the back pay

awards to go to each class member under the proposed Consent Decree, there was no disclosure whatsoever of the amount in attorneys' fees which would be awarded pursuant to the compromise. *See* Notice and Statement of Proposed Consent Decree in Class Action Suit, attached as Appendix A to Joint Interim Report Concerning the Results of Notice to the Class. Nor was this Court ever apprised of the dollar amount to be awarded as attorneys' fees until the Court independently undertook to ask for such information prior to final approval of the Consent Decree. Because, contrary to the approach recommended in the Manual, class members were not accorded the opportunity to object to the size of the fee award and question whether the size of such an award diminished their own monetary entitlement, this Court is unswayed by counsel's argument that the settlement package should be approved *in toto* solely because no class member has voiced objection to the settlement as described in the letter of notice. Additionally, counsel argues that

"the Court has already concluded by its order of March 23, 1976, that the settlement is in all respects fair, just and equitable insofar as the named Plaintiff and the unnamed class members are concerned, and Plaintiff submits that having made that determination, the Court's interest in the amount of attorneys' fees agreed upon should be substantially, if not totally, dissipated."

Memorandum on Attorneys' Fees, at 5. Although this Court tentatively approved the compromise as to the class prior to notice to class members, this Court has never declared finally that the terms of the total recommended settlement including the attorneys' fees are fair and reasonable. In the legal memorandum on the appropriate settlement procedure to be followed, which was submitted by counsel on October 9,

1975, at the request of the Court, counsel explicitly recognized that this Court's

"provisional entry of the Proposed Decree is in no way a determination '. . . on the fairness of the proposed settlement and the judge must be careful to make clear that the determination to permit the notice to be given to members of the class is not a finding that the settlement is fair and reasonable. On the contrary, he should make clear that it is simply a determination that there is, in effect, "probable cause" to submit the proposal to members of the class and to hold a full scale hearing on its fairness at which all interested parties will have an opportunity to be heard after which a formal finding on its fairness will be made.' "

Supplemental Memorandum in Support of Joint Motion to Enter Consent Decree, at 4 (October 9, 1975) (hereinafter "Memorandum on Settlement Procedures"), *quoting Manual for Complex Litigation* § 1.46.

The Manual goes on to state that at the hearing on the fairness and reasonableness of the proposed settlement, the Court should inquire as to how and by whom the fees of class counsel are to be paid, as well as the size of the fee, especially when the fee is to be paid over and above the monetary amount going to the class. *Id.*

Therefore, in view of the Manual's clear language as adopted by counsel in her earlier Memorandum on Settlement Procedures, counsel's present, tenuous argument that this Court is precluded from inquiring into the appropriateness of the fee because of its prior declarations with reference to the class compromise is totally without merit.[8]

## III. DETERMINING A REASONABLE ATTORNEYS' FEE

Having defined the alternative legal bases which trigger the instant inquiry, the

---

8. It would indeed be gratifying to a court if it could possess the expertise in the multiple complex legal areas with which it is confronted to foresee all problems that might arise in the dispositions of cases, particularly those in the embryonic fields of the law such as Title VII litigation. Unfortunately, this Court, and prob-

ably no court, enjoys such a luxury. Instead, a court relies on those expert in the area to present fully the relevant case law. In this instance the court followed the recommendations of counsel. Yet it was only upon the independent inquiry of the court that the present issue on attorneys' fees surfaced at all.

Court now turns to an examination of the appropriateness of the $12,000.00 fee requested in this case. In any Title VII class action wherein the attorneys' fees award is sought pursuant to section 706(k), the Fifth Circuit's opinion in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir. 1974) (hereinafter *Johnson* ), stands as an invaluable guidepost. In *Johnson,* the court has elucidated both the general principles which should be borne in mind by the district court, *see* Part II.B.3., *supra,* and twelve specific criteria which must be, and hereafter are, applied.[9]

### A. The Time and Labor Required

The necessary starting point is to determine the amount of time expended by counsel on the case. *Johnson, supra* at 717; *City of Detroit,* 495 F.2d at 470. In addition to the time-sheet affidavit submitted by counsel, the Court should weigh the hours claimed by counsel in light of the Court's own experience and observations and fashion a total time allowance which rationally reflects the services rendered. *Johnson, supra* at 717; *McDonald v. Oliver,* 525 F.2d 1217, 1233 (5th Cir. 1976); *Miller v. Mackey Int'l, Inc.,* 515 F.2d 241, 243 (5th Cir. 1975). Moreover, legal work should be distinguished from investigation, clerical work, compilation of statistics and other work which, although accomplished by the attorney, could be performed by a non-lawyer. *Id.; see, e. g., Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.,* 487 F.2d 161, 167 (3rd Cir. 1973) (hereinafter *Lindy Bros.*); *Parker v. Matthews,* 411 F.Supp. 1059, 1066 (D.D.C.1976).

In addition, counsel should indicate whether the person performing each task is a partner, associate, or law student. *Johnson, supra* at 718–719; *Parker, supra* at 1066.

Counsel's initial basis timewise for justifying the $12,000.00 fee was her expenditure of 121½ hours on the case. When this Court ordered a hearing on the issue of attorneys' fees and requested a legal memorandum on the applicable law, counsel thereafter amended the reported figures on time spent by appending 50¼ additional hours. Accordingly, counsel's present Itemization of Services (Plaintiffs' Exhibit 1) reflects a total time expenditure of 171¾ hours and, according to the exhibit, every hour logged is attributable to counsel's efforts and not to those of an associate.[10] Based upon counsel's itemization, this 171¾ hour total can be broken down as follows:

| Nature of Work | Merits | Attorneys' Fees Question | Total |
|---|---|---|---|
| (1) Trial Work—Hearing | 0 | 1.50 | 1.50 |
| (2) Pre-Trial Work on the Merits | 92.50 | 40.00 | 132.50 |
| (3) Conferences | 9.50 | 3.00 | 12.50 |
| (4) Clerical | 0 | 2.50 | 2.50 |
| (5) Informal Communications (Telephone, Letters) | 14.75 | 8.00 | 22.75 |
| TOTAL | 116.75 [11] | 55.00 | 171.75 |

The witnesses who testified at the April 9 hearing were of the opinion that the hours listed in the affidavit reflect a reasonable time expenditure. Although the total figure may be within a time range which could

9. *See generally* Comment, *Computing Attorneys' Fees in Class Actions: Recent Judicial Guidelines,* 16 B.C. Ind. & Com.L.Rev. 630 (1975).

10. Counsel has computed all entries, including telephone discussions, to the nearest quarter-hour. Contributing to a lack of specificity in the Itemization of Services is the failure of counsel to tie each entry to a particular date. Instead, counsel curiously has denoted only the month during which the entry occurred. In the future, this Court will expect a much more detailed presentation which denotes the nature of the work performed, the exact amount of

time spent on such work, and the exact date on which the work occurred.

11. In computing the amount of time expended by counsel on the merits of the action, as distinguished from the hours spent on the attorneys' fees question, the Court has classified all entries listed by counsel in her Itemization of Services up until her letter to the Court of March 17, 1976 (entry no. 68), as time spent on the merits. Therefore, the 116.75 hour total represents the sum of entries 1–67. The Court has classified entries 68–97, which total 55 hours, as hours expended on the question of attorneys' fees.

be anticipated for a person with counsel's prior legal experience, the Court cannot help but note and question the necessity for the 54 telephone conversations listed by counsel. Moreover, in accordance with the guidelines formulated by the Fifth Circuit in *Johnson, supra* at 718 (*see* Guideline No. 3), the Court must necessarily observe the professional level of the work product resulting from this time expended in at least two critical areas. It is now apparent that the notice to class members of the proposed settlement prepared by counsel was defective in that it failed to inform the class of the size of the attorneys' fees.[12] Additionally, the legal memorandum prepared by counsel on the attorneys' fees question totally fails to focus on the numerous case authorities which have discussed the district court's role in reviewing counsel fees which are part of a Rule 23 class action settlement. Instead, counsel has cited the Court to two opinions by the Fifth Circuit which address the manner in which a reasonable fee should be calculated by the district court in Title VII litigation, but which do not reach the central questions raised by counsel in the instant case. However, because these two problem areas represent more subjective, as opposed to objective criteria, they are more appropriately considered by the Court once the hourly rates to be applied in this case have been defined and multiplied by the hours logged. *See* Part III.C., *infra.*

### B. Rate of Compensation

█ The Fifth Circuit in *Johnson* has declared that the court should select an hourly rate which reflects "the customary fee for similar work in the community". 488 F.2d at 718. At no time should the fee for strictly legal work fall below $20 per hour prescribed by the Criminal Justice Act, 18 U.S.C. § 30006A(d)(1), for awards to appointed counsel in criminal cases. *Id.* The circuit court also has emphasized that

the hourly rate should be varied by the district court in accordance with the type of work being considered. *Id.* at 717. Accordingly, trial court should command a higher rate than pre-trial work. *See, e. g., Barth v. Bayou Candy Co.,* 379 F.Supp. 1201 (E.D. La.1974) ($40/hour for pre-trial work; $50/hour during trial); *United States v. Gray,* 319 F.Supp. 871, 875 (D.R.I.1970) ($35/hour for preparatory work; $50/hour at trial). Additionally, courts have stressed the importance of matching the compensation level with the experience and expertise of the attorney. *Johnson, supra* at 718–19; *City of Detroit, supra* at 471.

█ According to the testimony adduced at the April 9 hearing, counsel is a relatively new practitioner who joined her husband's practice approximately 2½ years ago. Counsel specializes in Title VII litigation and approximately 80 percent of her work is in this area. Although not established at the hearing, court records indicate that counsel was formally admitted to practice in the Southern District of Texas on January 30, 1974, two weeks after the complaint in this cause was filed by counsel's husband. Upon admittance, counsel immediately took over the formal prosecution of this cause and was listed on the Court's docket sheet as the "Attorney in Charge". It is therefore apparent that the instant action represents one of the first actions handled by counsel from the filing of the complaint to final resolution.

At the time counsel requested entry of the Consent Decree, she had expended 116.75 hours. Based upon the $12,000.00 attorneys' fees disclosed by counsel at the request of the Court, counsel was seeking a fee equalling approximately $100.00 per hour. However, when coupled with the 55 hours logged on the attorneys' fees question during March and April, 1976, the revised hourly rate approximates $70.00 per hour.

---

12. Counsel's failure to include the attorneys' fee in the notice to class members is curious in view of the fact that in the earlier Memorandum on Settlement Procedures submitted at the request of the Court, counsel primarily relied on Section 1.46 of the *Manual for Complex Litigation* which stresses repeatedly that the proposed fee must be disclosed to class members. *See* Part II.C.1. & note 8, *infra.*

The evidence forthcoming at the April 9 hearing establishes that fees for cases filed in federal district court in Houston, Texas, average $75.00 per hour. Partners in large Houston law firms charge a minimum of $90.00 per hour for cases in federal court. Associates, however, command an hourly rate in the $40.00 to $75.00 range. According to the attorneys who testified, these figures currently are being applied to civil rights employment discrimination actions such as the instant case. Moreover, the testimony establishes that the hourly fee varies with the type of work performed. Based upon the evidence adduced at the hearing, the Court finds the prevailing rate in Houston, Texas, for an attorney with counsel's prior legal experience to be $50.00 per hour for pre-trial work on the merits, including conferences, and $65.00 per hour for time actually spent in the courtroom.

Additionally, numerous courts have held that "the time spent on legal research and more complex tasks should not be accorded the same weight as the time spent on the telephone". *Parker v. Matthews, supra* at 1067 & n. 9; *Pete v. United Mine Wkrs.,* 171 U.S.App.D.C. 1, 517 F.2d 1275, 1290 n. 74 (1975). In light of the 22¾ hours expended by counsel on telephone conversations and other informal communications, the Court concludes that an hourly rate of $35.00 per hour should apply to this category, as well as to the clerical tasks performed by counsel.

In many cases, courts also have applied a lesser rate to the time spent on the attorneys' fees question. *See, e. g., Nat'l Assn. of Regional Medical Programs, Inc. v. Weinberger,* 396 F.Supp. 842 (D.D.C.1975); *cf. Culpepper v. Reynolds Metals Co.,* 442 F.2d 1078, 1081–82 (5th Cir. 1971). However, because the legal issues raised in the instant case are novel in the context of Title VII litigation, the Court is of the opinion that the hourly rates announced above also should apply to the time spent on the fee question.

Accordingly, the Court finds preliminarily that counsel is entitled to a reasonable attorneys' fee of $8,231.25 computed as follows:

MERITS:

| Nature of Work | Hourly Rate | Hours Logged | Total |
|---|---|---|---|
| (1) Trial Work—Hearing | $65.00 | 0 | 0 |
| (2) Pre-Trial Work on the Merits | 50.00 | 92.50 | $4,625.00 |
| (3) Conferences | 50.00 | 9.50 | 475.00 |
| (4) Clerical | 35.00 | 0 | 0 |
| (5) Informal Communications | 35.00 | 14.75 | 516.25 |
| TOTAL | | 116.75 | $5,616 25 |

ATTORNEYS' FEES QUESTION·

| Nature of Work | Hourly Rate | Hours Logged | Total |
|---|---|---|---|
| (1) Trial Work- – Hearing | $65.00 | 1.50 | $ 97.50 |
| (2) Pre-Trial Work on the Merits | 50.00 | 40.00 | 2,000.00 |
| (3) Conferences | 50.00 | 3.00 | 150.00 |
| (4) Clerical | 35.00 | 2.50 | 87.50 |
| (5) Informal Communications | 35.00 | 8.00 | 280.00 |
| TOTAL | | 55.00 | $2,615.00 |

TOTAL: $5,616.25 + $2,615.00 = $8,231.25

## C. Non-Objective Criteria

As the guidelines described in *Johnson* indicate, the Court cannot take a "mechanical hours-times-dollars approach, which reduces the award to an exercise in multiplication". *Miller v. Mackey Int'l, Inc.,* 515 F.2d 241, 242 (5th Cir. 1975). There are other more subjective elements which also must be considered in fashioning a reasonable fee. In lieu of discussing the potential applicability of each of the *Johnson* criteria to the case at bar, the Court will focus on three factors not considered previously which are relevant to a final determination of a reasonable fee award in this case.

### 1. Novelty and Difficulty of the Questions

An area of great concern to the Court in Title VII class action litigation is the method by which the scope of discovery on the

question of class certification is defined. The balancing of the plaintiffs' need for discovery on the class question in a Title VII lawsuit with the valid desire of defendant to limit discovery and avoid unnecessary expense is a difficult one, chiefly because the existing case law offers very little guidance. Counsel succeeded in obtaining a favorable ruling from this Court on the geographic and temporal scope of the class discovery requested by plaintiffs. In its discovery order, the Court sought to delimit the proper boundaries of class discovery in this particular case in light of recent Fifth Circuit authorities pointed out by counsel. Counsel submitted two legal memoranda in support of her position on the discovery questions, and the ruling which followed has, according to the witnesses who testified at the April 9 hearing, been relied upon in numerous cases by other Title VII plaintiffs to support their request for broad company-wide discovery.

## 2. The Results Obtained

The more important factor which would support an increased fee award is the fact that the proposed settlement provides for back pay awards to seven class members averaging $335.14 and enjoins the defendant from engaging in further acts or practices which discriminate on the basis of sex. The Court has witnessed all too often the familiar procedure whereby a named plaintiff alleges a class action and seeks to act as the class representative, but then compromises his or her individual claim for a certain monetary sum without any allowance for the class, monetary or otherwise. The Court is desirous of supporting incentives whereby counsel who seeks to represent a class on the merits is encouraged to represent the class during settlement negotiations as well, and is rewarded if he or she is successful in obtaining a class-wide compromise. Thus, standing alone, the scope of

the relief obtained by counsel in this case would merit an additional incentive payment.

## 3. The Skill Requisite to Perform the Legal Service Properly

The mandate of the Fifth Circuit in *Johnson* is clear:

"The trial judge should closely observe the attorney's work product, [her] preparation, and general ability before the court. . . . The trial judge is necessarily called upon to question the time, expertise, and professional work of a lawyer which is always difficult and sometimes distasteful."

488 F.2d at 718, 720. As this Court previously has discussed, *see* Part III.A., *supra,* the notice to class members prepared by counsel did not comport with the guidelines delineated in the Manual for Complex Litigation and relied upon by counsel in her Memorandum on Settlement Procedures. *See* note 11, *supra.* Moreover, as also pointed out in Part III.A., *supra,* the legal memorandum submitted on the attorneys' fees question does not discuss any of the case authorities independently located by the Court and analyzed in this opinion which have considered the specific arguments of counsel in the context of class settlements.

Therefore, having carefully considered the results obtained by counsel, the total work product and the level of professional expertise displayed in this case, and in view of the $50.00 hourly rate level previously applied both to the pre-trial work on the merits of the action as well as to the time expended on the attorneys' fees issue, this Court concludes that the fee of $8,231.25 as preliminarily calculated should remain intact. This constitutes an approximate hourly fee of $50.00. Such a figure compares most favorably with awards made in similar cases.[13]

13. *See, e. g., Parker v. Matthews,* 411 F.Supp. 1059 (D.D.C.1976) ($60/hour for pre-trial work); *Barth v. Bayou Candy Co.,* 379 F.Supp. 1201 (E.D.La.1974) ($50/hr. for trial work; $40/hr. preparatory work); *United States v. Gray,* 319 F.Supp. 871 (D.R.I.1970) ($50/hr. for trial work; $35/hr. for pre-trial work); *Wallace v. House,* 377 F.Supp. 1192 (W.D.La.1974) ($50/hr.); *Wade v. Mississippi Cooperative Extension Service,* 378 F.Supp. 1251 (N.D.Miss. 1974) ($35/hr.); *Clark v. American Marine Corp.,* 320 F.Supp. 709 (E.D.La.1970) ($35/hr.);

## IV. CONCLUSION

"It is unusual indeed for the district court to be placed in the position of having to contest the fees claimed . . . ." *Miller v. Mackey Int'l, Inc.,* 515 F.2d 241, 244 (5th Cir. 1975) (Bell, J., specially concurring). Nevertheless, all courts which have considered aspects of the attorneys' fees question in the context of a class action settlement have rejected unanimously any argument that the amount of the fee is beyond the scrutiny and control of the court, even if the fee is agreed to by the litigants. Rule 23 compels judicial regulation of the size of any attorneys' fee proposed as part of a class action settlement, and this obligation is magnified when coupled with the command in section 706(k) that a prevailing Title VII litigant may be awarded a *reasonable* attorneys' fee. Although the task is "difficult and sometimes distasteful," *Johnson, supra* at 720, this Court will not permit the extraction of an unreasonably large attorneys' fee by counsel for plaintiffs through use of the class action mechanism. Thus, to the extent the approach delineated in this ruling sounds the "death knell" of Title VII class action settlements which call for the payment of an unreasonable attorneys' fee, this Court will have satisfied its Rule 23 and section 706(k) responsibilities.

It is the public interest nature of a Title VII class action which compels this Court to reject any *pro forma* approval of the terms of the settlement, including the attorneys' fees provision. This Court endorses in full the philosophy recently expressed by Judge Renfrew of the Northern District of California on the distinction which must be drawn between private-oriented and public-oriented litigation when devising appropriate settlement procedures for a particular case:

"In a normal case involving private wrongs, such as breach of contract, the courts need not go behind the details of the proposed settlement. The assumption is that in such cases the combination of self-interest and the adversary system will typically result in an acceptable accommodation of interests once the two sides are aware of the legal and factual issues in the case. And in such cases there is no overriding public interest in more careful judicial scrutiny of proposed settlement.

"My concern, at least with respect to a considerable part of the litigation now being brought in the federal courts, is that the assumption that self-interest and the adversary system will achieve an acceptable accommodation of interests is no longer viable. Much of that litigation is not limited to the vindication of purely private interest. Many claims are based upon federal laws which are designed as much, if not more, to effectuate some important public policy as to vindicate private rights. Not infrequently the private right of action exists in large part because of its usefulness in advancing the underlying public policy.

". . . [i]n cases based on such bodies of law, the proper judicial role involves considerably greater scrutiny than in the more ordinary type of case. In cases involving these public policy considerations, the judicial inclination to encourage and accept settlements without close examination may have to be tempered.

". . . The private attorney general concept has been used primarily to facilitate the bringing of private suits under laws affecting the public interest. I believe that the same logic and policy that justify the encouragement of such suits also justify increased judicial scrutiny of the dismissal or settlement of such suits. . . . In negotiating a settlement the private litigant and his attorney are likely to be more concerned with the immediate question of their recovery than with (what is for them) the more remote question of the public interest."

and *Armstead v. Starkville Municipal Separate School Dist.,* 395 F.Supp. 304 (N.D.Miss.1975)

($35/hr. for trial work).

The Honorable Charles B. Renfrew, *Negotiation and Judicial Scrutiny of Settlements in Civil and Criminal Antitrust Cases,* 70 F.R.D. 495, 497–99 (1976). Judge Renfrew further notes that before approving a settlement affecting the public interest, the courts have been "(and should be) careful to see that the provision for attorneys' fees is carefully spelled out and is a matter of record and a part of the overall settlement". *Id.* at 503.

The Court hereby disapproves the recommended fee of $12,000.00 as unreasonable. Including the hours spent by counsel on the attorneys' fees question, the Court finds a fee of $8,231.25 to be reasonable compensation to counsel for her work effort. Had it not been for the attorneys fees' aspect of this case requiring additional time by counsel, a reasonable fee would have been $5,616.25. Such a fee is approximately 47 percent of the fee which plaintiffs' counsel successfully demanded and obtained from defense counsel and only upon direction ultimately submitted to this Court. Because the Court will not authorize the agreed-to attorneys' fee, the Court rejects the settlement as proposed. *See United States v. Allegheny-Ludlum Indus., Inc.,* 517 F.2d 826, 850 (5th Cir. 1975); *Wood v. Virginia Hauling Co.,* 528 F.2d 423, 426 (4th Cir. 1975).

The Court therefore does not reach the question of whether or not the proposed settlement is fair, adequate, and reasonable as to absent class members. Furthermore, any such determination by the Court at this time would be premature in any event because class members have never been informed fully of all the terms of the proposed settlement and offered the opportunity to voice objection to all provisions of the recommended compromise.

The Court, having made clear its role and the criteria to be applied in arriving at a reasonable fee, anticipates that counsel who seek to settle Title VII class actions in the future will agree on a reasonable fee which is rationally related to the legal services performed by the attorney. At the time the settlement package is presented to the Court for approval, supporting time-sheet affidavits and other documentation shall be submitted so that the Court can determine whether an evidentiary hearing is necessary to explore further the reasonableness of the proposed fee. Additionally the proposed fee shall be disclosed in the Rule 23(e) notice to the class members so that they can be fully informed as to the terms of the proposed compromise in deciding whether to accept or reject the proposal.

The Court is interested in effecting a speedy and final resolution of this cause of action. In that regard, counsel are hereby directed to confer and submit within twenty (20) days a joint report which indicates whether the litigants desire to consummate the substantive provisions of the proposed settlement and, if so, how the agreement should be executed. If the parties do so desire, and counsel for plaintiffs wishes to contest this Court's attorneys' fees ruling on appeal, counsel should explore a course of action adopted in other class settlements whereby the substantive award to the plaintiffs is severed from the attorneys' fees award so that the settlement can be perfected by the litigants and not deferred pending final resolution of the attorneys' fees question. *See, e. g., Levin v. Mississippi River Corp.,* 377 F.Supp. 926 (S.D.N.Y. 1974).