**UNITED STATES of America**

**v.**

**James E. GRAY, d/b/a Gray's Motel.**

**Civ. A. No. 4128.**

United States District Court,
D. Rhode Island.

Nov. 24, 1970.

Lincoln C. Almond, U. S. Atty. R. I. and Joseph C. Johnston, Jr., Asst. U. S. Atty. R. I., Providence, R. I., for plaintiff.

Kenneth M. Beaver, Providence, R. I., for defendant.

## OPINION

PETTINE, District Judge.

An action to enforce the provisions of Title II, Public Accommodations, of the Civil Rights Act of 1964 (Pub.L. 88–352, 42 U.S.C. § 2000a et seq.) was instituted by the United States pursuant to 42 U. S.C. § 2000a–5, against defendant motel owner, alleging a pattern or practice of discrimination against Negroes in admission to and use of the facilities of defendant's motel. Having reached and decided the merits of this case previously (315 F.Supp. 13 (D.R.I.1970)), I have before me for disposition only the question of the propriety of an award of counsel fees to the prevailing party— here, the defendant.

Authority for such award is provided by 42 U.S.C. § 2000a–3(b):

"In any action commenced pursuant to this subchapter [Title II, Public Accommodations], the court, in its discretion, may allow the prevailing party other than the United States, a reasonable attorney's fee as part of the costs, and the United States shall be liable for costs the same as a private person."

Defendant prevailed here and seeks recovery against the United States for the $15,000 fee submitted to him by his attorney.

At the hearing upon this question, the defendant's position was that the statutory intent was to make whole the prevailing party, within the limitations of a "reasonable fee." While conceding liability for a reasonable fee, the government argued that the fee requested here was excessive, but offered no guidance to the court in reaching any other determination, presumably in part because of the professional sensitivity of one attorney toward the fee practice of another.

■ It seems that the precise question presented here is one of first impression. The most helpful authority, however, is that provided by Newman v. Piggie Park Enterprises, 390 U.S. 400, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968) (per curiam), which was a private action under Title II, brought pursuant to 42 U.S.C. § 2000a–3(a). Reversing the Circuit Court holding that counsel fees should be awarded to the prevailing party under § 2000a–3(b) only where defenses had been interposed for delay or in bad faith, the Court noted:

"When the Civil Rights Act of 1964 was passed, it was evident that enforcement would prove difficult and that the Nation would have to rely in part upon private litigation as a means of securing broad compliance with the law. A Title II suit is thus

private in form only. * * * If successful plaintiffs were routinely forced to bear their own attorneys' fees, few aggrieved parties would be in a position to advance the public interest by invoking the injunctive powers of the federal courts. Congress therefore enacted the provision for counsel fees—not simply to penalize litigants who deliberately advance arguments they know to be untenable but, more broadly, to encourage individuals injured by racial discrimination to seek judicial relief under Title II."

390 U.S. at 401–402, 88 S.Ct. at 966. In the instant case, in which the United States is the party plaintiff, the policy expressed in *Newman*, of encouraging private enforcement of the Civil Rights Act, is inapplicable, since the Attorney General presumably needs no incentive to bring an action to enjoin racial discrimination. Rather the policy behind the award of counsel fees in § 2000a–5 cases, as substantiated by the legislative history of the Act, is that of discouraging the government from bringing meritless cases. Typical of the expressed Congressional intent with respect to the award of attorney's fees under § 2000a–3(b)[1] is the following remark by Senator Lausche during debate prior to passage:

"That language was inserted in the bill to deter the bringing of lawsuits without foundation."

110 Cong. Rec. at 13189–90.

Senator Pastore agreed:

"The purpose of this provision * * * is to discourage frivolous suits * * *."

110 Cong.Rec. at 13720–21.

In Bell v. Alamatt Motel, 243 F.Supp. 472 (N.D.Miss.1965), an individual action pursuant to 42 U.S.C. § 2000a–3(a), the court denied attorney's fees where the prevailing party had incurred no ob-

---

1. It must be kept in mind that because of peculiar statutory draftsmanship, the award of attorney's fees in a Title II action is based upon § 2000a-3(b) re-

gardless of whether it is a 2000a-3(a) suit (private action) or a 2000a-5 suit (brought by the United States).

ligation to pay, but explained the Congressional policy behind the award of counsel fees in Civil Rights Act cases:

"The statute under examination here, 42 U.S.C. § 2000a–3, expressly submits the awarding of attorney's fees to the discretion of the court, and permits such an award to the prevailing party, whether plaintiff or defendant. * * * Congress is experienced in expressing its intention that a statutory award of attorney's fees is designed to encourage litigation and serve as punishment to an unsuccessful defendant. It did not do so in the Civil Rights Act of 1964, but rather expressed a purpose to discourage unmeritorious litigation. * * * it was recognized that unmeritorious complaints under the Act could produce as serious a burden on commerce as the discrimination which it forbids, and that some measure of control should be vested in the courts toward the prevention of such a burden."

243 F.Supp. at 474.

I adopt the *Bell* reasoning in this regard.

Since my prior opinion already found the government's case meritless, defendant here clearly falls within the ambit of the policy supporting recovery of counsel fees in a suit brought by the Attorney General.[1a] Thus, the government having correctly conceded that this is a proper case for recovery of counsel fees under § 2000a–3(b), the exact amount thereof remains to be determined.

As a starting point, the defendant's counsel, a member of the Rhode Island Bar for twenty-five years, has presented a bill for $15,000 as a fee for 229¾ hours expended in the preparation and trial of the case plus $14.60 for transportation and telephone calls. He contends he relied on the minimum fee schedule published by the Rhode Island Bar Association. I find no separate allocation for such appropriate items as the novelty of the case,[2] his experience in the legal community, and defendant's possible injury from an adverse result. Defendant's counsel presented the expert testimony of two long-time members of the Rhode Island Bar who offered their opinions that a $15,000 fee for this case was not unreasonable, in light of these factors, which they considered appropriate for inclusion in a fee charge. Their opinions in turn were based in part upon the Canons of Professional Ethics of the Rhode Island Bar Association, Canon 12 of which provides, in pertinent part:

"12. Fixing the Amount of the Fee. In fixing fees, lawyers should avoid charges which over-estimate their advice and service, as well as those which undervalue them. A client's ability to pay cannot justify a charge in excess of the value of the service, though his poverty may require a less charge, or even none at all. * * *

In determining the amount of the fee, it is proper to consider: (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite properly to con-

---

**1a.** The debates in Congress belie any possible contention that Congress did not appreciate the nature of the recovery which it was authorizing. Senator Hart remarked to his colleagues at one point: " * * * as has already been indicated, there is absolutely no precedent for providing, in civil actions, for the payment of an attorney's fee. * * * " 110 Cong.Rec. at 13189.

Furthermore, numerous amendments were offered but rejected on the floor of the Senate to modify or eliminate entirely the provision in question. Finally, the contrast between § 2000a-3(b) and

§ 2000c-7 (relating to the award of costs, not including attorney's fees, in Title IV, Public Education, actions), which were passed at the same time and which therefore must be construed together, illustrates that Congress was aware of the authority which it was providing.

**2.** I recognize that this factor may cut both ways. An area of the law which is barren of precedent may eliminate many hours of research and preparation otherwise needed. It may also necessitate a more time-consuming search for analogous authority.

duct the cause; (2) whether the acceptance of the employment in a particular case will preclude the lawyer's appearance for others in cases likely to arise out of the transaction, and in which there is reasonable expectation that otherwise he would be employed, or will involve the loss of other business while employed in the particular case or antagonisms with other clients; (3) the customary charges of the Bar for similar services; (4) the amount involved in the controversy and the benefits resulting to the client for services; (5) the contingency or the certainty of the compensation; and (6) the character of the employment, whether casual or for an established and constant client. No one of these considerations in itself is controlling, nor is that enumeration of considerations necessarily complete. They are usually the principle [sic] guides in ascertaining the real value of the service.

In fixing fees it should never be forgotten that the profession is a branch of the administration of justice and not a mere money-getting trade."

The Code of Professional Responsibility of the American Bar Association *requires* an attorney to take these same factors into consideration when setting a fee for services rendered to a private client. Canon 2 of that Code provides in part as follows:

"EC [Ethical Consideration] 2–17 The determination of a proper fee requires consideration of the interests of both client and lawyer. A lawyer should not charge more than a *reasonable fee.* \* \* \*

EC [Ethical Consideration] 2–18 The determination of the *reasonableness of a fee requires consideration of all relevant circumstances,* including those stated in the Disciplinary Rules. The fees of a lawyer will vary according to many factors, including the time required, his experience, ability, and

reputation, the nature of the employment, the responsibility involved, and the results obtained. Suggested fee schedules and economic reports of state and local bar associations provide some guidance on the subject of reasonable fees \* \* \*" (emphasis added)

The relevant Disciplinary Rule under Canon 2 is DR 2–106, entitled "Fees for Legal Services," which provides in part:
"\* \* \*

(B) \* \* \* Factors to be considered as guides in determining the reasonableness of a fee include the following:

(1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly.

(2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.

(3) The fee customarily charged in the locality for similar legal services.

(4) The amount involved and the results obtained.

(5) The time limitations imposed by the client or by the circumstances.

(6) The nature and length of the professional relationship with the client.

(7) The experience, reputation, and ability of the lawyer or lawyers performing the services.

(8) Whether the fee is fixed or contingent."

Defendant's counsel, therefore, had an affirmative obligation under the ABA Code, to take into consideration those factors which constitute that part of his bill in excess of the minimum fee schedule. To ignore them would have been an unethical undervaluation of his services. Furthermore, the Supreme Court of Rhode Island[3] and our own Circuit

---

3. Palumbo v. United States Rubber Co., 102 R.I. 220, 229 A.2d 620 (1967);

Lisker v. Monti, 74 R.I. 310, 60 A.2d 485 (1948).; Higgins v. J. B. Farnum

Court[4] have upheld the propriety of a fee which is based in part upon these factors, in private litigation. Nor can the outcome be different here because the party against whom defendant seeks recovery is the United States government, since, in the language of the statute, a reasonable attorney's fee may be allowed as part of the costs, "* * * and the United States shall be liable for costs *the same as a private person.*" [emphasis added]

At the hearing upon this petition the United States suggested that perhaps there are times when even the minimum fee schedule, based upon actual time expended, would be an overestimate of an attorney's value to his client. Conceding, *arguendo*, that there may be cases which are not "worth" the minimum fee, I do not think that this is such a case. It is reasonable to assume that defendant's business would have been seriously jeopardized, and perhaps even destroyed, by a finding by this court that defendant pursued a "pattern or practice of discrimination" against Negroes.

I agree with the defendant's witnesses that a reasonable fee in this case should be based on the Rhode Island Bar Association minimum fee schedule plus a reasonable sum for all the other factors which it is permissible to consider.

On the basis of the testimony, I compute it as follows:

Trial (5 days)—30 hours at $50 per hour—$1500.

Four motions prepared and argued (November—2 hours; January—2 hours; March—3 hours; March—3½ hours)—10½ hours at $35 per hour—$367.50.

Defendant's counsel did not list an attendance fee which I deem should be allowed at $100 per hour for a total of $400.

Deducting 40½ hours from the total hours indicated, it leaves 189¼ hours to be computed at $35 per hour for a total of $6,623.75.

The total sum allocable under the minimum fee schedule is, therefore, $8,891.-25.

This leaves for determination a sum for all those other factors set forth in the Canons of Professional Ethics and authorities cited *supra*. It hardly need be said this is not subject to a precise formula and reasonable men can differ. In keeping with the offered testimony, I deem $2,500 reasonable.

 I hereby allow as a reasonable attorney's fee the sum of $11,391.25.

An order will be prepared accordingly.

---

Co., 61 R.I. 262, 200 A. 538 (1938); Page v. Avila, 55 R.I. 52, 177 A. 541 (1935); Gorman v. Banigan, 22 R.I. 22, 46 A. 38 (1900); see also Flynn v. Pearce, 259 A.2d 401 (R.I.1969).

4. Angoff v. Goldfine, 270 F.2d 185, 189 (1st Cir. 1959).