**Edward RICHARDSON, Plaintiff,**

v.

**HOTEL CORPORATION OF AMERICA et al., Defendants.**

**Civ. A. No. 70–826.**

United States District Court,
E. D. Louisiana,
New Orleans Division.

Sept. 21, 1971.

Kendall L. Vick, John B. Wilkinson, New Orleans, La., for plaintiff.

David Andrew Lang, New Orleans, La., for defendants.

ALVIN B. RUBIN, District Judge:

The issue in this case is whether a hotel may lawfully discharge a bellman because, previous to his employment by the hotel, he had been convicted of theft and of receiving stolen goods. The argument that raises the issue is based on the thesis that it can be shown that more black persons than white have been convicted of serious crimes, and hence that the discharge of persons based solely on their criminal record is inherently discriminatory racially, hence violates Title VII, 42 U.S.C. § 2000e et seq. as well as the Civil Rights Act of 1866, 42 U.S.C. § 1981.

The plaintiff filed an application for employment at the Royal Sonesta Hotel at a time when the newly constructed hotel was just beginning operation. When asked on his application whether he had been convicted of a crime other than minor traffic violations, he responded in the affirmative. At this time, the hotel was hiring a large number of new employees and it could not secure police checks prior to its opening; as a result of this and a clerical error made in processing the plaintiff's application, he was hired as a bellman. As soon as his prior convictions of theft and receiving stolen goods were reported in a routine employment check, he was informed that he would not be eligible to continue as a bellman, but was offered other employment with the defendant. He refused the offer and was discharged. He was later replaced by a black bellman.

The plaintiff contends his discharge was discriminatory. Griggs v. Duke Power Co., 1971, 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158, supplies the basic test: Congress has required "the removal of artificial, arbitrary, and unnecessary barriers to employment when the barriers operate invidiously to discriminate on the basis of racial or other impermissible classification." 91 S.Ct. at 853. In *Griggs* the Court found that to require a high school diploma or the ability to pass a standardized general education test as a condition of employment in or transfer to certain jobs operated to disqualify Negroes at a substantially higher rate than whites. There had been no showing by the employer that there was any real relationship between this educational requirement and ability to do the job. "Congress has

placed on the employer the burden of showing that any given requirement must have a manifest relationship to the employment in question." Griggs v. Duke Power Co., *supra*, 91 S.Ct. at 854.

The evidence here shows that the hotel rejects applicants for employment in positions it considers "security sensitive" if they have been convicted of a serious crime. Bellmen occupy one of the several positions that the hotel considers "security sensitive." They have access to guests' luggage and to guests' rooms. They are permitted to obtain room keys from the desk clerk, and even to go behind the desk for keys. They may go through hotel corridors unaccompanied without provoking inquiry. They may enter and leave the hotel by any exit during the day, carrying parcels, while most employees must use a special employees' entrance where they are subject to scrutiny by a guard, and packages are subject to inspection. Some effort is made by the Head Bellman to be aware of the whereabouts of bellmen during the day. Bellmen are expected to keep time records showing their activities. But these are not carefully scrutinized and they can of course be easily evaded: a bellman going to any specified room on a real errand might stop by another room en route without making any entry on his duty sheet.

The crucial issue therefore is whether the hotel's policy has been shown to be required by its business needs. A past criminal record affords no basis to predict that a given person will commit a future crime. But the evidence indicates that a group of persons who have been convicted of serious crimes will have a higher incidence of future criminal conduct that those who have never been convicted. It is reasonable for management of a hotel to require that persons employed in positions where they have access to valuable property of others have a record reasonably free from convictions for serious property related crimes.

Furthermore, the evidence demonstrates that the policy followed with respect to the plaintiff has been followed with regard to white bellmen. Moreover, the defendant has shown that it does not exact a similar requirement of employees who do not have access to guests' property, and that it has had an exemplary record with respect to affording equal opportunity in jobs at all levels to persons who are members of minority groups. While not decisive, these factors suggest that the requirement was not intentionally invidious. Because of this, it may be concluded that the discharge of the plaintiff was not the result of an artificial, arbitrary or unnecessary barrier, but resulted instead from a genuine business need.

No federal statute prohibits discrimination per se; rather, what is prohibited is discrimination that is racially motivated. Here, no racial discrimination is shown. For these reasons it is unnecessary to accept the invitation to explore issues of whether it would be acceptable to base an employment criterion on arrest records,[1] or whether conduct that does not violate Title VII might violate Section 1981. Assuming jurisdiction under either or both statutes, the plaintiff has failed to show discrimination because of race, and the defendant has established that its criteria were reasonable and related to job necessities.

Having prevailed, the defendant seeks *to recover its attorney's fees from the* indigent plaintiff who proceeded in forma pauperis. What practical purpose such an award would serve in this matter is inscrutable, though it might conceivably serve as precedent *in terrorem* to discourage other Title VII plaintiffs.

The statute provides: "In any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorney's fee as part of the costs, and the Commission and the United States shall be liable for costs the

---

1. Cf. Gregory v. Litton Systems, Inc., 1970, U.S.D.C.C.Cal., 316 F.Supp. 401.

same as a private person." 42 U.S.C. § 2000e–5(k). The statutory language may therefore be broad enough in terms to permit a successful defendant to recover attorney's fees, but it is unnecessary to decide that here. In any event, the award is discretionary with the court. The court finds that the award is not justified here for, so far as can be determined from the record, the plaintiff proceeded in good faith on the advice of competent counsel to attempt to vindicate statutory rights. The defendant's demand for attorney's fees is therefore denied.

This opinion, together with the Supplemental Findings of Fact and Conclusions of Law, will serve as findings of fact and conclusions of law. Judgment will therefore be entered in favor of the defendant and against the plaintiff rejecting the plaintiff's demands.

## SUPPLEMENTAL FINDINGS OF FACT

1. Prior to the opening of the Royal Sonesta Hotel several thousand applications for employment were received and at least partially processed.

2. The Royal Sonesta Hotel opened for business in New Orleans, Louisiana on September 11, 1969.

3. The Royal Sonesta Hotel is owned and operated by The Royal Orleans, Inc., a wholly owned subsidiary of Sonesta International Hotels Corp., successor to Hotel Corporation of America.

4. On August 13, 1969, plaintiff, Edward Richardson, reported for work as a bellman at the Royal Sonesta Hotel.

5. Plaintiff had no previous experience as a bellman. The Royal Sonesta Hotel completely trained him to perform his duties as a bellman.

6. During the first six months of operation of the Royal Sonesta Hotel, approximately one thousand employees were processed for employment.

7. The criminal records of many new employees were not checked because of the large number of new employees.

8. A systematic check of the criminal records of all new employees was conducted on an alphabetical basis.

9. Defendant learned of plaintiff's criminal convictions on November 19, 1969.

10. There were a number of thefts of property (valued at approximately $90,000.00) from guests of Defendant Hotel during the period September-December 1969.

11. The position of bellman is highly sensitive from a security standpoint.

12. Plaintiff was terminated November 20, 1969 because of his prior criminal convictions and the fact he worked in a security sensitive position.

13. Defendant Hotel offered plaintiff a job in a non-security-sensitive position at a rate of pay comparable to that of bellman.

14. Defendant Hotel terminated the employment of a white bellman on September 11, 1969, on the basis of a criminal record.

15. Defendant Hotel terminated the employment of a white bellman on November 25, 1969, on the basis of a criminal record.

16. Plaintiff was replaced in the position of a bellman by a Negro.

17. Defendants have an exemplary record in the field of providing job opportunities for minority groups and the hard-core unemployed.

18. The work force of Defendant Hotel is composed of 61.7 percent minority group members, including many supervisors, managers and professionals, while the population of Metropolitan New Orleans, Louisiana is composed of only 31.0 percent Negroes.