**UNITED STATES STEEL CORPO-RATION, Petitioner,**

v.

**UNITED STATES of America et al., Respondents.**

Civ. A. No. 71–1172 CA.

United States District Court,
W. D. Pennsylvania.

Sept. 16, 1974.

Robert W. Hartland, Reed, Smith, Shaw & McClay, Pittsburgh, Pa., for petitioner.

Philip B. Sklover, Washington, D. C., for respondents.

## OPINION

JOHN L. MILLER, District Judge.

Subsequent to petitioner's challenge under 42 U.S.C.A. § 2000e–9 to respondents' demand for production and copying of documentary evidence and the Circuit's affirmance of our setting aside and modifying certain of the demands,[1] it seeks to compel the payment of costs and attorney fees appertaining to this litigation from the respondents under the provisions of Section 706(k) of Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e–5(k).[2] The respondents oppose the award of any attorney's fees arguing the administrative enforcement proceedings are not the actions or proceedings for which Congress authorized the award of attorney's fees and, in the alternative, maintain petitioner is not entitled to attorney's fees for those separable issues on which its position was not upheld.

After having carefully considered the record in this case, the briefs filed, as well as the authorities cited therein and the arguments of counsel, this Court is of the belief that attorney's fees should not be awarded to petitioner as an ingredient of its costs. In so holding, we recognize the precise issue here presented is one of first impression requiring resort to statutory construction, the legislative history and search for analogous authorities.

In United States v. Gray, 319 F.Supp. 871 (D.C.R.I.1970), the Court considered the underpinnings for an award of at-

torney's fees to a prevailing defendant in a Title II action wherein the government conceded liability after the Court found the government's case to be meritless. In considering the public policy pertinent to awarding attorney fees, the Court observed, "[it] is that of discouraging the government from bringing meritless cases." Id. at 872. This determination of Congressional intent was derived from the Court's consideration and analysis of the Senate debates prior to passage of the Civil Rights Act of 1964, and such comments as typified by the remarks of Senator Lausche: "That language was inserted in the bill to deter the bringing of lawsuits without foundation" and Senator Pastore, "The purpose of this provision * * * is to discourage frivolous suits * * *." Id.

Our review of the Congressional Record [3] discloses that among the many amendments to the Civil Rights Bill was Senator Stennis' amendment which would have provided that in actions brought by the Attorney General, "[t]he court, in its sound discretion, would select the attorney, or the defendant would select an attorney who would be agreeable to the court, and a reasonable attorney's fee would be allowed only if the court should find everything had been done in good faith." In the colloquy of the debate that followed,[4] Senator Keating commented with regard to the amendment, "[t]here are no rules laid down as to how the court is to exercise its discretion. It could permit the richest man in the country, in the court's discretion, to have his lawyer paid by the Government. I do not think any of us would want to see that done." Senator Stennis replied, "[t]his amendment is designed to help a man who has a

---

1. U. S. Steel Corporation v. U. S., 487 F.2d 1396 (3 Cir. 1973).

2. The text of the section reads as follows: "In any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs,

and the Commission and the United States shall be liable for costs the same as a private person."

3. 110 Congressional Record at page 13189 (1964).

4. 110 Congressional Record at pages 13189–13190.

bona fide defense but who might otherwise not be able to defend himself. The amendment provides that the court decides whether he shall have that help." Senator Lausche stated his understanding of the general spirit of allowing attorney's fees which was quoted by the Court in United States v. Gray, supra. Upon roll call vote the amendment of Senator Stennis was defeated.

An amendment subsequently introduced by Senator Ervin would strike from the bill the language allowing the court in its discretion to award to the prevailing party a reasonable attorney's fee as part of the costs. Senator Ervin remarked, "I do not believe that it is good public policy for the Congress to encourage any kind of ambulance chasing. That is exactly what the provision authorizing the taxation of attorneys' fees would do." [5] In response, Senator Pastore, after stating his understanding of the purpose of the bill,[6] commented, "[f]irst of all, it [award of attorney's fees] is within the discretion of the court. It is not favoritism toward one party as against the other. When a person realizes that he takes the chance of having attorney's fees assessed against him if he does not prevail, he will deliberate before he brings suit. He will make certain that he is not on frivolous ground." [7] This amendment was similarly defeated. Thus, section 706(k) of Title VII of the Civil Rights Act of 1964 emerged as an accommodation between two congressional concerns. The first, the inability of low income minorities to bear the financial burden of attorney's fees in vindicating their Civil Rights; and, secondly, the award of attorney fees to those parties who must defend against unreasonable, frivolous, meritless or vexatious actions brought by either private parties or the government.

Our view of the statute is in harmony with Richardson v. Hotel Corporation of America, ' 332 F.Supp. 519 (E.D.La. 1971), aff'd 468 F.2d 951 (5 Cir. 1972), an action under Title VII by an employee against his employer. The Court denied an award of attorney's fees to the prevailing defendant concluding such was not justified in view of the plaintiff's proceeding in good faith on the advice of competent counsel. Although not determining the full scope of the statutory provision, the Court did find the matter to be discretionary. The Court further noted, "[w]hat practical purpose such an award would serve in this matter is inscrutable, though it might conceivably serve as precedent *in terrorem* to discourage other Title VII plaintiffs." 332 F.Supp. at 521. In accord is Paddison v. Fidelity Bank, 60 F.R.D. 695, 699 (E.D.Pa.1973), a Title VII action where the Court in considering the authorization of attorney fees under section 706(k) of the Civil Rights Act of 1964, observed, "Such an award would normally be made to prevailing defendants *only if the case had been unreasonably brought*, but prevailing plaintiffs, having established forbidden discrimination, would almost always qualify for such an award." (Emphasis added.) Likewise, an early article [8] interpreting the statutory provision for awards of attorney's fees noted, "[t]he statute's provision for awards of attorney fees to the prevailing 'party' does not mean they should be made to prevailing respondents as liberally as to prevailing claimants. \* \* \* Awards to respondents should be limited to unusual situations, such as defense against clearly fraudulent claims."

The latest effort to amend section 706(k) of the Civil Rights Act of 1964 was by the Senate in the Equal Employment Opportunity Act of 1972, P.L. 92–261, March 24, 1972. The Senate amendment permitted payment of costs and counsel fees to small employers or labor organizations if they prevailed in

---

5. 110 Congressional Record at page 13720. 13721.

6. Hereinabove quoted in the text of this Opinion at page 347.

7. 110 Congressional Record at pages 13720–

8. Walker, Title VII: Complaint & Enforcement Procedures & Relief & Remedies, 7 B.C.Ind. & Com.L.Rev. 495, 506 (1966).

actions brought against them by the Commission or the United States. An employer or union with 25 or fewer employees or members would have been entitled to up to $5,000, and an employer or labor organization with from 25 to 100 employees or members whose average income from such employment was less than $7,500, would have been entitled to one-half the cost of its defense up to $2,500.[9] There is no explanation why the Senate receded when the House Bill contained no comparable provisions.

Our consideration of the record in this proceeding, in light of the foregoing, convinces us that the respondents' demand for access was a bona fide effort to seek information and, while substantial controversy surrounded the scope of the information sought, there is nothing to indicate the demand for access was brought to harass, embarrass or abuse either the petitioner or the enforcement process, nor can we say respondents' action was unfounded, meritless, frivolous or vexatiously brought.

An appropriate order shall be entered.

---

9.   2 U.S.Code Cong. & Admin.News (1972) at 2183.