**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff,**

v.

**NEW ENTERPRISE STONE AND LIME COMPANY, INC., Defendant.**

Civ. A. No. 77–134.

United States District Court, W. D. Pennsylvania.

June 15, 1977.

James S. Bukes, EEOC, Pittsburgh, Pa., Abner W. Sibal, William L. Robinson, EEOC, Washington, D.C., Delores Wilson, Frank J. Tuk, Lanier E. Williams, EEOC, Philadelphia Regional Office of General Counsel, Philadelphia, Pa., for plaintiff.

Edward H. Feege, Hayes & Feege, Allentown, Pa., Edward N. Stoner, Reed, Smith, Shaw & McClay, Pittsburgh, Pa., for defendant.

## OPINION

COHILL, District Judge.

The issues presented here concern the court's *ex parte* granting of defendant's motion to extend the time to answer or otherwise respond to plaintiff's Interrogatories and Requests for Admission, and defendant's request for the award of counsel fees in connection with a subsequent related hearing.

Plaintiff, the Equal Employment Opportunity Commission ("EEOC"), filed a complaint against defendant, New Enterprise Stone and Lime Company ("Company"), alleging that the Company had practiced religious discrimination against one of the Company's employees. The Company had allegedly discharged the employee for his refusal to work on a Saturday, which is observed as the Sabbath by his church, the Worldwide Church of God.

The Company was originally represented by Edward H. Feege, Esq., from Allentown, Pennsylvania, which is located outside of the Western District of Pennsylvania; subsequently Edward N. Stoner, II, Esq. of Pittsburgh, joined as co-counsel for the defendant in order to bring it into compliance with Local Court Rule 1, which requires attorneys not having an office in this District to have associate counsel from within the District "upon whom or at whose office all notices, rules and pleadings may be served. . . . ." Local Rule 1(e).

Trial counsel for plaintiff EEOC was Frank J. Tuk, Esq. of Philadelphia, and its local counsel was James S. Bukes, Esq. of the EEOC Pittsburgh office.

The discovery documents, consisting of 32 interrogatories and 25 requests for admission, were served with the complaint. The Company, therefore, had 45 days to respond, that is until March 31, 1977. Fed.R. Civ.P. 33 and 36. By the terms of a March 16 stipulation, entered into by Mr. Tuk and Mr. Feege, answers to the discovery documents could be filed by April 4, but any objections by the Company still had to be filed by the original due date of March 31.

On March 29 Mr. Stoner filed a motion for an extension to May 2 for the Company to respond to the discovery documents. The motion stated, *inter alia,* that the EEOC would not consent to it and averred that the extension of time was necessary because copies of the discovery documents sent by Mr. Feege to the Company had been lost in the mail. On March 30, we signed the order granting the extension to May 2.

On April 14, some two weeks later, the EEOC filed a document entitled "Motion to Strike Motion of Defendant for Extension of Time in which to Respond to Plaintiff's First Request for Admissions and First Interrogatories" (hereinafter referred to as the "Motion to Strike"). Since that motion was filed approximately two weeks after the order granting the extension had been entered, we will treat it as being in the nature of a motion for the court to reconsider its order granting the extension.

The Motion to Strike averred, *inter alia,* that the EEOC had been prejudiced by the court's granting of the extension; we therefore ordered a hearing for April 29, 1977. In the meantime, on April 27 the Company filed its Admissions of Fact, and

on April 28 filed its responses to the EEOC's interrogatories. Most of the interrogatories were answered; several were objected to by the Company.

## I

### The Court had the authority to grant an extension of time *ex parte.*

■ Granting or denying such a motion rests solely within the discretion of the Court, Fed.R.Civ.P. 33(a) sets forth the time for answering interrogatories and then states: "The court may allow a shorter or longer time." Addressing the same question on Request for Admission, Rule 36(a) states:

> "The matter is admitted unless, within 30 days after service of the request, *or within such shorter or longer time as the court may allow,* the party to whom the request is directed serves upon the party requesting the admission a written answer or objection . . .." (Emphasis supplied)

In addition, Fed.R.Civ.P. 6(b) provides that:

> ". . . the court for cause shown may at any time in its discretion (1) with or without motion or notice order the period enlarged if request therefore is made before the expiration of the period originally prescribed or as extended by a previous order . . .."

It is clear from the language of the Rules that they intend to vest in the court the sort of discretion exercised in the instant case. E. g., *United States v. A. B. Dick Co.,* 7 F.R.D. 442 (N.D.Ohio 1947).

## II

### Defendant complied with Local Rules

■ In its motion and brief plaintiff EEOC also averred that the Company had failed to comply with this court's Local Rule 4(a)2.[1]

The Company's certificate of service was attached to its motion for the extension of time. The certificate was signed by Mr. Stoner and stated that he had served it by hand-delivering a copy to EEOC's local counsel, Mr. Bukes, and mailing a copy to plaintiff's Philadelphia counsel. The notice also advised that it would be filed "today". Local Rule 1(e) requires that there be associate counsel within the District where "notices, rules and pleadings may be served." Thus, that portion of the Local Rule requiring proof of service and notice was met. At the hearing EEOC's Philadelphia counsel argued that he disagreed with this Local Rule, feeling government agencies ·should not be required to have local counsel; nevertheless it is a Local Rule, and EEOC had local counsel in the person of Mr. Bukes.

Also attached to the Company's March 29 motion was the alternate certificate required by Local Rule 4(a)2 (See footnote 1, *supra* ). It was signed by Mr. Stoner, averring that he had called Mr. Tuk and Mr. Williams, another attorney in plaintiff's Philadelphia office, but that they were "not available to discuss the matter." The cer-

---

1. "2. Miscellaneous Motions: These are motions which require notice and a copy thereof to be served on the opposing party or counsel, together with an acceptance of service thereof. The notice shall set forth the time when said motion will be filed with ·the Clerk of Court. Unless such motion is accompanied by proof of service on all parties and unless it is accompanied by a proposed appropriate Order of Court, it is improper and may be stricken by the Court upon its own motion or upon the motion of an adverse party.

\* · \* \* \* \* \*

The Clerk of Court shall not accept for filing under the Rules of Civil Procedure any motion relating to discovery unless said motion is accompanied by a Certificate from counsel of record certifying that they have conferred and consulted with respect to each matter set forth in said motions and are unable to resolve the differences which exist. Said Certificate shall set forth the exact time and place of the conference and consultation. Where counsel for movant cannot furnish the required Certificate he shall furnish an alternate Certificate stating that opposing counsel has refused to so meet and confer or to sign the required Certificate or stating such other facts and circumstances supporting the absence of the required Certificate and movant's efforts to obtain compliance by opposing counsel."

\* \* \* \* \* \*

tificate stated that Mr. Stoner had talked to Mr. Bukes, local EEOC counsel, who had said that he did not have authority to grant an extension for EEOC and that Mr. Tuk "was not agreeable to the extension."

The certificate also stated that Mr. Stoner's co-counsel, Mr. Feege, had attempted to discuss the matter with Mr. Williams on March 24 and that Mr. Tuk's secretary on March 25 advised Mr. Feege that Mr. Tuk was "not disposed" to consent to the extension.

The proposed order, attached to the Company's request for the extension, had been prepared by Mr. Stoner as required by Local Rule 4. Besides providing for an extension to May 2, 1977, the proposed order also provided for the award to defendant of "reasonable attorney's fees in connection with this motion." We crossed out that portion of the proposed order awarding counsel fees to the defendant and then signed it.

There is no doubt that the Company fully complied with the Local Rules of this Court.

Under normal circumstances, the signing of the order granting the extension of time would have been the end of it, and counsel would have gotten on with the task of discovery in anticipation of eventual settlement or trial of the issues presented.

### III

#### The Motion by EEOC was Unfounded, Meritless, Frivolous and Vexatious

█ The granting of the extension of time by the Court should have been a minor footnote in a not-unusual-case; thereafter, however, a number of unusual events transpired. Our office received a call from EEOC's Philadelphia counsel questioning the propriety of the court signing the order *ex parte.* The validity of this act by the court has been discussed in Part I above.

Next came the EEOC's Motion to Strike, supported by an eleven-page brief. Although not required to grant a hearing on the Motion to Strike, we did so, believing that on its face the motion indicated it had merit, particularly the allegation that "granting the defendant's motion without affording the plaintiff the opportunity to be heard operates to its prejudice."

At the hearing the EEOC argued that it had been prejudiced because the court, in granting the motion, was enabling the defendant to file objections to the discovery matters after March 31, while the original stipulation entered into by Mr. Feege and Mr. Tuk had provided that the Company would have until April 4 to file its answers, but any objections would have to be filed by March 31.

As the EEOC states, the granting of the extension did indeed enable the Company to file objections as late as May 2, rather than requiring it to file them by March 31. EEOC, however, failed to explain how this 33-day difference prejudiced it. Any party is permitted to file timely objections under the Federal Rules. To refuse the extension under the circumstances present here would have operated to the prejudice of the defendant, not the plaintiff. Originally, the Company had until March 31 to file objections; for the EEOC to seek to prevent objections from being interposed in this proceeding, because they might be filed 33 days later strikes us as petty and vexatious, especially since the Motion to Strike wasn't filed until April 14.

Also, according to the EEOC's brief, the enlargement of time granted was "in excess of that dictated by the pleadings." The EEOC stated that the interrogatories and requests for admission were "narrowly drawn . . . so that the 45 days . . . would be more than enough time for defendant to frame its answers thereto." That, of course, is a subjective opinion.

We note that there were 25 Requests for Admission and 32 Interrogatories. Interrogatory 10 stated:

"For the period January 1, 1968 to December 31, 1976 identify every job site operated by defendant in Pennsylvania. Include the following information:

a. Exact location of the job site.

b. State the specific types of work done at each job site.

c. State the hourly and daily schedule of operation.

d. State whether or not the "traxcavator" was in use or available for use.

e. State when this job site was closed down."

The Company's answer to that Interrogatory gave the requested information and described some 48 jobs it had completed throughout Pennsylvania. Obtaining that information alone must have required considerable searching in the Company's files. A request for an extension for the time to answer from March 31 to May 2, using this interrogatory alone as the reason, would have been sufficient grounds for granting the motion had grounds been necessary.

In all, the Company's response to the Requests for Admission was five pages long, and its Answers to Interrogatories were 45 pages plus a number of attached exhibits.

We hold that the extension was not excessive, and we consider as unfounded and meritless the EEOC's argument that the extension was longer than necessary.

Last, the EEOC averred that we were permitting a delay of the case in the face of a declaration by Congress in the Civil Rights Act of 1964, that in these cases, the judge assigned will ". . . cause the case to be in every way expedited." 42 U.S.C. 2000e–5(f)(5).

That argument was moot on the day of the hearing. The Company's admissions, answers and objections had already been filed.

We feel compelled to express concern about the zealousness of the EEOC in pursuing this matter—not unlike hunting mice with an elephant gun. With its Motion to Strike, EEOC filed an eleven-page brief. At the hearing EEOC was represented by Mr. Tuk, who came in from Philadelphia, and by Mr. Bukes, its local counsel. The hearing took approximately thirty minutes. The EEOC chose to go forward with the hearing, and have Philadelphia counsel travel to Pittsburgh for it, even though defendant's responses to the discovery documents had already been filed on April 27 and 28.

On a facade of the building housing the Department of Justice in Washington, D. C. is the following legend:

"THE UNITED STATES WINS ITS CASE WHENEVER JUSTICE IS DONE ONE OF ITS CITIZENS IN THE COURTS."

Every hearing and trial, be they civil, criminal, or administrative in nature, is a search for ultimate truth. The Federal Rules of Discovery are designed to assist in that search and are to be liberally construed. *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947). "Victory is intended to go to the party entitled to it, on all the facts, rather than to the side that best uses its wits." Wright, *Federal Courts*, p. 398 (3d Ed. 1976).

Those precepts, however, are potentially subject to abuse; a party should always have the reasonable opportunity to challenge discovery by means of legal objections. The disadvantage to the Company, had we not granted the extension, would have far outweighed any disadvantage to the EEOC resulting from the extension of time to object or file answers.

The function of a government attorney is somewhat different from that of a private attorney. In 1934 Mr. Justice Sutherland addressed himself to that role in this way:

"The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done."

*Berger v. United States*, 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314 (1934).

True, Justice Sutherland's remarks were made in the context of the role of the United States Attorney in a criminal case; they should nevertheless apply with equal force today to the actions of federal attorneys representing the myriad governmental

regulatory and administrative agencies which have materialized since 1934.

It is not inconceivable that a small company could literally be put out of business by the cost of having to be represented at hearing after hearing over frivolous side issues. Where does the search for justice and ultimate truth end and injustice begin? It is easy to generalize, and say that "everyone is entitled to his day in court," whether it is the "little guy" or "the government". When that "day" becomes "many days", requiring the retention of counsel, filing of briefs and all the other trappings which are a part of any court proceeding, it becomes "injustice" at some point. A little common sense is required.

Considering the circumstances surrounding this matter, and the arguments advanced by the EEOC in support of its position, we hold that EEOC's motion was unfounded, meritless, frivolous and vexatious.

### IV

Defendant is Entitled to Counsel Fees

■ As previously noted, when the Company filed its motion for an extension of time we refused its request for counsel fees by simply striking that part of the proposed order before signing it.

After EEOC filed its Motion to Strike, the Company renewed its request for attorney's fees, citing Fed.R.Civ.P. 37(a)(4) and 42 U.S.C. § 2000e–5(k).

At the hearing we refused the EEOC's Motion to Strike and took the Company's request for counsel fees under advisement.

Following the hearing counsel for the Company filed an affidavit claiming attorney's fees and expenses of $374.00, related to the hearing on the EEOC motion. This was arrived at by charging $65.00 per hour for 5½ hours of legal work, or $357.50 for preparation of a brief and argument at the hearing. In addition the affidavit listed $16.50 for multilithing and other reproduction costs, or a total bill of $374.00.

Having determined that the actions of the EEOC here were unfounded, meritless, frivolous and vexatious, the question is whether or not the Company is entitled to counsel fees under the Federal Rules or the Civil Rights Act of 1964.

The Company cited Fed.R.Civ.P. 37(a) for the proposition that it should be awarded counsel fees. This Rule is entitled "Failure to make Discovery; Sanctions." Section (a)(4) of the Rule states that if the moving party prevails, the court may award counsel fees and reasonable expenses. The entire thrust of the Rule, however, is toward the recalcitrant party to whom discovery was directed. It is clearly intended to provide sanctions in those cases where the party seeking discovery is compelled to come into court to achieve it. We hold, therefore, that in this case the Company is not entitled to counsel fees under Rule 37.

■ The next question is whether defendant is entitled to counsel fees under the Civil Rights Act of 1964. 42 U.S.C. § 2000(e)–5(k) provides:

> "In any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorney's fee as part of the costs, and the Commission and the United States shall be liable for costs the same as a private person."

Since the Act provides for counsel fees and costs in "any action or proceeding," was the instant hearing, which was really only a side issue to the entire case, an "action or proceeding" where counsel fees may be awarded? It was.

In *Van Hoomisen v. Xerox Corporation,* 503 F.2d 1131 (9th Cir. 1974), the court awarded attorney's fees in a situation involving an interlocutory appeal, stating at 1133:

> "The Commission also argues that Section 706(k) authorizes an award only to the 'prevailing party.' Although Xerox 'prevailed' on this interlocutory appeal, it might still lose the principal case and thus not 'prevail.' We agree that litigation should not be dissected to the point that the losing party be permitted to recover attorney's fees connected with

every procedural motion on which it prevails. But this interlocutory appeal is sufficiently significant and discrete to be treated as a separate unit. Thus, the fact that Xerox prevailed on this appeal qualifies it as a 'prevailing party' eligible for an award of attorney's fees connected with the appeal."

Although the instant case involved a procedural motion, we hold that in the present circumstances the Company, as prevailing party, is entitled to attorney's fees.

In *United States Steel Corporation v. United States,* 519 F.2d 359 (3d Cir. 1975), involving a discovery matter, the court upheld a ruling by Judge John L. Miller of this District, refusing to award counsel fees (reported at 385 F.Supp. 346). In doing so, however, the court approved Judge Miller's criteria for entitlement to counsel fees:

"The indicia associated with the grant of any attorney's fee—vexatiousness, bad faith, abusive conduct, or an attempt to harass or embarrass—were absent. We do not find the district court's formulation of the standard to be erroneous." (footnote omitted) 519 F.2d at 364.

See also: *Equal Employment Opportunity Commission v. Children's Hospital of Pittsburgh,* 556 F.2d 222 (3d Cir., 1977).

We hold that the instant proceeding met the stated standard.

On May 4, 1977, counsel for the Company filed an affidavit of attorney's fees, and we received yet another brief from the EEOC. It was 15 pages long with 25 pages of photostatic copies of documents, most of which were copies of legal papers already part of the record.

Among other things, this brief averred that defendant's affidavit of attorney's fees had been filed prematurely since the court had not yet ruled on defendant's motion for attorney's fees. The awesome zeal of the government in this case is reflected in the following passage in the EEOC's second brief:

"In view of the foregoing, in the event that the Court grants defendant's motion for attorney's fees and costs, the Court is requested to also order a hearing to determine the amount of fees and costs, and further provide in said order for the taking of the depositions of co-counsel Stoner and Feege in addition to such other attorney or agent of the firm of Reed Smith Shaw and McClay who has knowledge of, and or custody and control of all relevant documents that support the fees and costs request within fifteen (15) days of said order."

We will not attempt to hazard a guess as to what the cost of this suggested procedure might be. There can be no doubt, however, that the expense to the government, if there were two or three depositions and another hearing, would far exceed the $374 in question.

The judge-hours and lawyer-hours involved in such a procedure represent the expenditure of money and, to a large extent, taxpayers' money. There would be transportation costs, since we assume the EEOC Philadelphia counsel would want to come back to Pittsburgh at least twice— once for the depositions and once for the hearing, just as he did for the hearing of April 29. We take judicial notice under Fed.R.Evid. 201 that the tourist class, round trip airfare between Philadelphia and Pittsburgh is $84.00. It would appear that the main beneficiaries of the EEOC's requested procedure would be the airlines, the court reporters, and the suppliers of photostatic equipment; certainly the litigants and the taxpayers would be the losers.

We must also note that this could become a "Catch-22" situation; if the EEOC suggestion were adopted, there would be a second hearing to determine what the appropriate attorney's fee should be for the April 29 hearing; presumably the Company would be entitled to attorney's fees for that second hearing. Followed to its logical extreme, the EEOC's suggested procedure would then be repeated to determine what the attorney's fees should be for the last previous hearing on attorney's fees, and so on *ad infinitum.*

We will not add to this tangled web by burdening the Company and the taxpayers

who support the EEOC, with an additional hearing or depositions, concerning how counsel for the company arrived at a figure of $357.50 for counsel fees and $16.50 for expenses.

We are familiar with the prevailing legal fees in this area, the competency of counsel for defendant and the quality of the brief filed in behalf of the defendant in this matter. We believe that $65 per hour is a reasonable charge for this attorney's services and that five and one-half hours was a reasonable time in which to prepare the brief and argue the motion.

An order for the award of $357.50 in counsel fees to Mr. Stoner will be entered.

■ There is some question as to the propriety of awarding the $16.50 cost of multilithing and reproducing in this case. 28 U.S.C. § 1920 sets forth what items the court may tax as costs. Ordinarily photostats are not included. It has been held that costs for reproduction and printing of documents may be taxed as costs if the "reproductions are offered into evidence or otherwise obtained for use in the case." *Sperry Rand Corporation v. A–T–O, Inc.,* 58 F.R.D. 132, 139 (E.D.Va.1972).

No reproductions or multiliths were introduced at the hearing. We will therefore deny the request for $16.50 for multilithing and reproduction costs.