Mark ISAACS and Margaret W. Isaacs

v.

TEMPLE UNIVERSITY et al.

Civ. A. No. 73–1992.

United States District Court, E. D. Pennsylvania.

March 16, 1979.

Thomas W. Jennings, Philadelphia, Pa., for plaintiffs.

Richard Z. Freemann, Jr., Ballard, Spahr, Andrews & Ingersoll, Philadelphia, Pa., for defendants.

## MEMORANDUM AND ORDER

VanARTSDALEN, District Judge.

Plaintiffs filed a civil rights action against Temple University and various individuals who were members of Temple University's teaching and/or administrative staff. Plaintiffs alleged that their respective terminations as employees of Temple University violated their substantive and procedural due process rights and their right of freedom of speech.

Defendants' motion for summary judgment for failure of plaintiffs to establish the requisite "state action" was denied in a landmark decision by Hon. A. Leon Higginbotham, Jr., reported in 385 F.Supp. 473 (E.D.Pa.1974). Upon Judge Higginbotham's appointment to the Court of Appeals, the case was reassigned to me. The case was tried upon a waiver of a jury trial and the trial lasted approximately two weeks. At the conclusion of the trial, I made findings of fact and conclusions of law, and on August 26, 1977 entered judgment in favor of the defendants on all issues.

On September 8, 1977, defendants filed a petition for the award of counsel fees. No ruling has been made on the petition, pending final outcome of the appellate process. The Court of Appeals for the Third Circuit affirmed by judgment order dated September 7, 1978 and I have been informed that the Supreme Court denied a petition for certiorari on February 20, 1979. Defendants presently seek a ruling on their petition for counsel fees.

The petition for attorneys' fees contains the names of the lawyers and parale-gals performing the services. There is no itemization of the nature of the services rendered by each. The dates services were rendered are not itemized. For example, it shows a date of "11/74—Robert J. Fields—90.25 hours." Another example is "12/76—3/77—George E. Moore—150.2 hours." The petition contains a statement that "[o]n the basis of their normal hourly billing rates at the various times in question, the total fee for the hours indicated above is as follows:

> A. Attorneys ............... $78,617.25
> B. Legal Assistants .......... 8,867.00
>      Total ................. $87,484.25"

The petition is entirely too meager in detail to permit an award of any fee, or even to ascertain the beginning "lodestar" figure. It fails in many respects to comply with the requisites set forth in "Lindy I" and "Lindy II." *Lindy Brothers Builders, Inc. v. American Radiator and Standards Sanitary Corp.*, 540 F.2d 102 (3d Cir. 1976) (Lindy II), and 487 F.2d 161 (3d Cir. 1973) (Lindy I). I have no doubt, however, that the deficiencies could and would be corrected by amendment or through supplement by way of introducing evidence upon a hearing.

Because the record has not yet been returned by the appellate court, I do not have the contents of the plaintiffs' formal answer or pleading to the petition. Plaintiffs have, however, recently addressed a letter, by way of an informal answer to the defendants' renewed application to determine the attorneys' fees petition. That letter shall be docketed and filed.

Before determining the amount of any attorneys' fee to be awarded in this case, it is appropriate first to determine whether the award of any attorneys' fee should be made. In determining this issue, I rely solely upon the established record, without reference to the letter from the plaintiffs. That letter contains assertions of fact not presently of record; the assertions are not by way of affidavit; defendants have had no opportunity to cross-examine as to these assertions.

Partly in response to *Alyeska Pipeline Service Co. v. Wilderness Society,*

421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975), Congress amended 42 U.S.C. § 1988 to provide that the "prevailing party" in certain civil rights actions could be awarded a reasonable attorney's fee, in the court's discretion.

> In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985 and 1986 of this title . . . or in any civil action or proceeding by or on behalf of the United States of America, to enforce, or charging a violation of . . title VI of the Civil Rights Act of 1964, the court, in its discretion may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

There is no doubt that the statute is applicable to this case which proceeded to trial on the basis, *inter alia*, of a violation of 42 U.S.C. § 1983. There is no doubt that in appropriate cases a "prevailing party" defendant is entitled to an award of an attorney's fee. There is no doubt that defendants in this case were "prevailing parties." There is no doubt that the award of counsel fees is a matter of the court's discretion rather than an absolute right.

The statute is silent as to what considerations should go into determining whether to award or deny attorneys' fees. I turn, therefore, to the legislative history for guidance, as reported in 1976 U.S.Code Cong. and Admin.News at 5909, *et seq.*:

> The purpose and effect of S. 2278 are simple—it is designed to allow courts to provide the familiar remedy of reasonable counsel fees to prevailing parties in suits to enforce the civil rights acts which Congress has passed since 1866 . . . All of these civil rights laws depend heavily upon private enforcement, and fee awards have proved an essential remedy if private citizens are to have a meaningful opportunity to vindicate the important Congressional policies which these laws contain.

> . . . If private citizens are to be able to assert their civil rights, and if those who violate the Nation's fundamental laws are not to proceed with impunity, then citizens must have the opportunity to recover what it costs them to vindicate these rights in court.

It is clear that Congress was primarily concerned with encouraging individual citizens to seek legal redress. The legislative history refers to *Newman v. Piggie Park Enterprises*, 390 U.S. 400, 402, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263 (1968), that a party enforcing such rights "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." The legislative history further noted that:

> In the large majority of cases the party or parties seeking to enforce such rights will be plaintiffs and/or plaintiff-intervenors . . . *Shelley v. Kraemer*, 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161 (1948).

Turning to the possible liability of a nonprevailing plaintiff, the committee noted that "such 'private attorneys general' should not be deterred from bringing good faith actions to vindicate the fundamental rights here involved by the prospect of having to pay their opponent's counsel fees should they lose," citing *Richardson v. Hotel Corporation of America*, 332 F.Supp. 519 (E.D.La.1971), *aff'd*, 468 F.2d 951 (5th Cir. 1972). The committee report stated further:

> Such a party, if unsuccessful, could be assessed his opponent's fee only where it is shown that his suit was clearly frivolous, vexatious or brought for harassment purposes. *United States Steel Corp. v. United States*, 385 F.Supp. 346 (W.D.Pa. 1974), aff'd, 487 F.2d 1396 (3d Cir. 1975).

.     .     .     .     .

> This bill thus deters frivolous suits by authorizing an award of attorneys' fees against a party shown to have litigated in "bad faith" under the guise of attempting to enforce the Federal rights. .     .

.     .     .     .     .

If the cost of private enforcement actions becomes too great, there will be no private enforcement. If our civil rights laws are not to become mere hollow pro-

nouncements which the average citizen cannot enforce, we must maintain the traditionally effective remedy of fee shifting in these cases.

■ Throughout the pretrial proceedings and the trial, I was always convinced, and remain so today, that the plaintiffs were thoroughly honest persons who sincerely believed that their constitutional rights had been violated both procedurally and substantively by reason of their discharge and/or nonrenewal as employees of Temple University. There were very close and difficult factual and legal issues to be determined. The manner in which plaintiffs and their thoroughly competent attorney conducted pretrial proceedings and the trial itself lacked any hint of vexatiousness or harassment. Clearly, the claims were not frivolous and the litigation was not conducted in bad faith or as a sham. Plaintiffs simply failed to prove their case by the required preponderance of the evidence.

Civil rights actions are frequently filed by attorneys acting pro bono or through some publicly funded legal services organization such as Community Legal Services. Plaintiffs frequently are granted leave to proceed in forma pauperis. In such cases, ordinarily, a successful defendant will not seek an award of attorneys' fees as the "prevailing party" because of the practical impossibility of collecting. I think it is relatively rare that a private civil rights action is filed by a person who is financially capable of paying *any* attorneys' fees. Present plaintiffs were at least capable of privately retaining their own attorney. Presumedly, they have incurred substantial legal expenses. To hold them liable now for an additional $43,000 of the defendants' attorneys' fees because of their nonrecovery in this lawsuit would be completely contrary to the purposes of the amendment to 42 U.S.C. § 1988, and would constitute an abuse of discretion.

The right of freedom of speech is not to be so chilled by official action. The doors to federal courthouses must remain open to all who have justiciable federal causes of action. They must remain open not only to the rich and the poor, but also to multitudes in between who do not qualify for publicly supported legal aid, and who can afford the ever-increasing costs of legal services only by great personal sacrifice. To impose upon plaintiffs the customarily not-immodest claims of their opponents for counsel fees as a penalty for failing to convince the fact finder by a preponderance of the evidence, would, in my estimation, effectively barricade the courthouse doors to all middle-income civil rights plaintiffs except those with the most reckless gambling natures.

■ I am not unmindful that defendants in civil rights actions are frequently public agencies or publicly financed agencies. Indeed, in those many cases where "state action" is a jurisdictional requisite, as was determined in this case, the defendants are by definition public bodies or individuals acting on behalf of or under color of some official purpose. In a perfect society they should not be required to expend public funds to defend against claims that are eventually determined to be invalid. This may be said of all civil litigation. The "American Rule" however does not impose counsel fees on the losing parties under normal circumstances. *Alyeska Pipeline Service Co., supra.*

An award of attorneys' fees to defendants in this case will not only "chill," but will solidly deep freeze the prospects of hard-working, self-supporting, middle income citizens seeking judicial relief from what they sincerely and reasonably perceive to be violations of their civil rights. Although defendant Temple University may be financially hard pressed, I am sure that it would not want to establish such a socially undesirable precedent.

The petition for an award of attorneys' fees will be denied.